[Civil No. 2085.   Filed November 21, 1923.]

[220 Pac. 229.]

## SAN FRANCISCO SECURITIES CORPORATION, a Corporation, Appellant, v. PHOENIX MOTOR COMPANY, INC., a Corporation, G. F. ROGERS and O. E. ROGERS, Appellees.

CONTRACTS—SALES—PROVISION OF CONDITIONAL SALE CONTRACT DENYING RIGHT TO SET UP DEFENSES OR COUNTERCLAIMS AGAINST ASSIGNEE, HELD VOID. — *Provision of conditional sale contract making defenses based on fraud, duress, mistake, want of consideration or any other ground not available to buyer as against the seller's assignee, and providing for payment to assignee without recoupment, set-off or counterclaim, held void under Civil Code of*

See 13 C. J., p. 455; 35 Cyc. 664.

1913, paragraph 402, providing that action by the assignee shall be without prejudice to any set-off, or other defense existing before notice of the assignment, as against public welfare, and ousting the courts of jurisdiction.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  F. H. Lyman, Judge.  Affirmed.

Mr. James E. Nelson, for Appellant.

Messrs. Dougherty & Dougherty, for Appellees.

DARNELL, Superior Judge.—This is an action on contract between the San Francisco Securities Corporation, plaintiff, and Phoenix Motor Company, Inc., and G. F. Rogers and O. E. Rogers, defendants.

In its complaint the plaintiff alleged that on the twentieth day of June, 1918, the defendants Rogers entered into a written agreement with defendant motor company for the purchase by them from said company of a certain tractor for the price of $1,700, payable $850 upon the signing of said agreement and $850 on January 15, 1919, which agreement was on the same day duly assigned to plaintiff by said defendant motor company, a copy of the agreement and the assignment thereof being annexed to and made a part of the complaint; that the defendant motor company delivered the tractor to, and the same was accepted by, the defendants Rogers; but that the said defendants had not complied with the agreement regarding the payment of the balance due, and that the said sum, with interest at ten per cent per annum from January 15, 1919, was due, and plaintiff asked recovery in this amount, together with $50 attorney's fee, as provided in the agreement.

The cross-complaint of defendants Rogers consists of four counts, but only the second one will be considered in this opinion, as the verdict and judgment were based upon it. In this count they alleged that on the date of the purchase of the tractor they were engaged in general farming near Mesa, Arizona, and in the growing of grains and various crops necessitating the plowing and cultivation of tracts of land of considerable size, which facts were well known to plaintiff and defendant motor company at the time the agreement for the sale of the tractor was entered into; that the defendant motor company warranted the tractor to effectively and economically pull two bottom plows and three discs in the plowing of land; to likewise operate other machinery usually driven by such motive power; that said tractor and its appliances were further warranted to be well made of good material, free from defects, and capable of doing first-class work in plowing, discing, operating hay presses, and such other farm work as that in which the same might operate under conditions existing in general farming and dairying in the vicinity of Mesa; that the said motor company further warranted to keep on hand and replace all parts of said tractor that might prove defective within one year from delivery of tractor; to furnish the services of an expert gas engine and tractor mechanic to keep the tractor in first-class working condition, and to repair the tractor promptly when necessary; that said defendants believed and relied upon the representations and warranties of defendant motor company, and observing all instructions of defendant company in good faith attempted to operate the tractor and to secure from it the warranted service; that the tractor was not as represented, and was incapable of doing any satisfactory work, was not economical and effective, and required fre-

quent expensive repairs; that said defendants noti-
fied the defendant company of the situation, but that
defendant motor company neglected and refused to
repair the tractor, or to assist the said defendants
in obtaining satisfactory service from it; that de-
fendant motor company refused to accept the return
of the tractor, and shortly thereafter discontinued
business, and the said defendants ask damages for
breach of warranty in the amount of $1,700.

Issue was joined by plaintiff's second amended
reply which set up paragraph 12 of the sales con-
tract as a bar to defendants Rogers' recovery. This
paragraph was as follows:

"(12) As a part of this contract of conditional
sale, it is further agreed that in the event of assign-
ment of the seller's interest in said personal prop-
erty, and of the moneys payable hereunder, then
the purchaser upon such assignment shall be pre-
cluded from in any manner attacking the validity
of this contract on the ground of fraud, duress,
mistake, want of consideration, or upon any other
ground, and all moneys, shall be paid to such assigns
without recoupment, setoff, or counterclaim of any
sort whatsoever."

At the trial it was stipulated by the parties that
the defendants Rogers purchased the tractor from the
defendant motor company; that the contract of pur-
chase was thereafter assigned by said company to
the plaintiff; and that the balance sued for was
unpaid by defendants Rogers.

Plaintiff having rested, G. F. Rogers, one of the
defendants, was called as a witness in his own
behalf, and, upon offering testimony in support
of his answer and cross-complaint setting up breach
of warranty, plaintiff objected to the same, for the
reason that the defendants Rogers had waived such
defense, and were estopped from setting up the
same by virtue of paragraph 12 of their contract,

and which objection was by the court overruled; whereupon various witnesses were sworn and examined, evidence produced in support of the cross-complaint, and the cause having been submitted, a verdict was returned for G. F. Rogers and O. E. Rogers for damages in the amount of $1,381.50 against defendant motor company, from which the jury deducted the amount of $1,179 sued for by plaintiff, leaving a balance in said verdict in favor of the said Rogers of $202.50. Judgment on this verdict was filed December 22, 1921, in which the defendants Rogers recovered their costs and disbursements and the cancellation of all notes, contracts and agreements relating to the purchase of the tractor as against the plaintiff, and the damages in the amount set out in the verdict as against the defendant motor company; the plaintiff recovering $1,179 and its costs against defendant motor company.

Plaintiff thereupon filed its motion for a new trial, which was denied, whereupon it gave notice of appeal, and filed its bond as provided by law. The defendant motor company did not appeal.

Appellant assigns the following as errors of the lower court, because of which it contends that judgment should be reversed: (1) That the court erred in overruling the plaintiff's objection to the introduction of any evidence by the defendants G. F. Rogers and O. E. Rogers substantiating said defendants' answer and cross-complaint, for the reason that defendants had waived such defense, as shown by said paragraph 12 of the sales contract; (2) that the verdict returned by the jury is contrary to law; (3) that the judgment herein filed is contrary to law.

These assignments of error can be considered together; for, if the court was in error in overruling the objection to the introduction of any evidence

by the defendants, under their answer and cross-complaint, it follows that the verdict of the jury and the judgment based thereon are contrary to law.

The question then to be answered in the appeal is: Had defendants Rogers by the terms of paragraph 12 of the sales contract waived their right to set up a claim for damages for breach of warranty against the Phoenix Motor Company, Inc., assignor of the contract?

This paragraph of the contract is in direct conflict with paragraph 402, Revised Statutes of Arizona of 1913, which provides:

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any setoff or other defense existing at the time of, or before the notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration before due."

The appellees contend that paragraph 12 of the sales contract is contrary to public policy, because it is in conflict with the foregoing paragraph of the statute, and is therefore void. Not every agreement waiving the benefits of a public statute is void on the ground of public policy, it being held generally that statutory provisions designed solely for the benefit of individuals may be waived by the persons for whose benefit they are designed. Such holdings have been made concerning agreements not to plead the statute of limitations, not to change the venue of an action at law, and the like; but in each instance the agreement was a waiver of a mere privilege granted the individual, and had no tendency toward undermining that sense of security for rights of persons or property which any citizen ought to feel. Nor did they smack of fraud, oppression, wrongful advantage, or unfair dealing.

The waiver paragraph in question in this case is far from being indefinite, vague or uncertain. It bodily stands forth, announcing the sacrifice of every right of the defendants Rogers under the sales contract, save that of paying the stipulated price of the tractor, precluding them from seeking relief in court from fraud, duress, mistake, want of consideration or on account of the refusal or failure of the seller or assignee to carry out the agreements of the seller.

Is this paragraph, then, a waiver of a mere privilege of the individual? Can one party to a contract be bound thereby to submit in silence to the fraudulent acts of the other; can he be precluded from questioning the validity of a contract on the ground of duress, mistake or want of consideration in the face of a statute providing that the action by the assignee shall be without prejudice to any defense existing at the time of, or before, the notice of the assignment? If so, by virtue of contract, fraudulent practices may go unchecked, oppressive conditions imposed upon individuals, who in times of necessity agree to such impositions as are recited in the contract paragraph in question, and the courts shall be closed to them who are most in need of the assistance of the law.

In *Bridger* v. *Goldsmith,* 143 N. Y. 424, 38 N. E. 458, the court, in speaking of a stipulation similar to the one before us, said:

"A mere device of the guilty party to a contract intended to shield himself from the results of his own fraud, practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on the part of the plaintiff, that however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the trans-

action or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. . . . Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing."

Enforcement of the provisions of paragraph 12 of the contract, as contended for by the appellant, would oust the courts of this state in the exercise of their jurisdiction to settle or adjust disputes arising under contract, for, except that of payment, there would be no plea under any circumstances the purchaser in this and like transactions could interpose. In 6 Ruling Case Law, page 752, this phase of the situation is admirably discussed:

"There is no doubt of the general principle that parties cannot by contract oust the ordinary courts of their jurisdiction. That has been decided in many cases. After a right has accrued or an obligation has been incurred a party may waive his rights or refuse and neglect to enforce them or he may by contract bind himself to submit the matter to arbitration or other special remedy. But although it is permissible to submit to arbitration pending lawsuits or existing differences it is not permissible for persons to stipulate in advance that in the event of differences arising in the future they will deny themselves the right to resort to the courts for their settlement. The whole state has an interest in all its inhabitants and it is to its interest that the rights of all should be protected and enforced according to the course of jurisprudence it has provided; that for that reason its courts are always open for the

redress of wrongs, and no person can by contract deprive himself in advance of the right to appeal to them."

In the case of *Tarbell, Admr., etc.,* v. *Rutland R. R. Co.,* 73 Vt. 347, 87 Am. St. Rep. 734, 56 L. R. A. 656, 51 Atl. 6, it was held that a contract, by which the next of kin of one about to be employed by a railroad company releases the company from liability to him for damages resulting from injuries to the employee occasioned by negligence of the employer, is void as contrary to public policy, where a statute provides for such liability. The court defined public policy as follows:

"The general rule of law is stated to be that whatever tends to injustice or oppression, restraint of liberty, and natural or legal right, or to the obstruction of justice, or to the violation of a statute, and whatever is against good morals, when made the subject of a contract, is against public policy and void. It is said that they are not contracts, but unlawful agreements which are void in their inception."

This court, in the case of *Stapley Co.* v. *Rogers et al., ante,* p. 308, 216 Pac. 1072, in speaking of a clause in a conditional sales contract, which provided that in case of the default of the purchaser in the payment of installments on the purchase price, the seller might retain all payments theretofore made as rent for the use of said property, cited that section of the Uniform Conditional Sales Act (Acts 1919, c. 40) which reads:

"No act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of sections 18, 19, 20, 21, and 25."
—and said:

"The law places certain duties and obligations upon the seller which he may not shirk, nor can he avoid

them by exacting or receiving from the buyer a promise of immunity. The purpose of the law was to protect the buyer, the seller in such transactions not usually needing protection. The provision of this law forbidding the buyer to enter into any contract of waiver is a declaration by the legislature of a public policy, and under the decisions one may not contract contrary to such policy. *Desseau* v. *Holmes,* 187 Mass. 486, 105 Am. St. Rep. 417, 73 N. E. 656; *Massillon Engine & Thresher Co.* v. *Wilkes* (Tenn.), 82 S. W. 316; *Crowe* v. *Liquid Carbonic Co.,* 208 N. Y. 396, 102 N. E. 573.''

While it is to be conceded that a contract waiving a right conferred by statute is not void unless the statute conferring the right is based upon high motives of public policy, certain statutes confer rights upon the individual personal to him, yet of such a character as to affect the public welfare. Such is paragraph 402 of the 1913 Civil Code, which was intended, we believe, to protect the public against questionable transactions, which, by assignment of the rights of an original party thereto, become infallible instrumentalities of injustice, burden and oppression. The aid of no statute declaring agreements that grant immunity from the results of forcible and fraudulent acts is necessary in order to declare such agreements against public policy; but as to the relinquishment by contract of the right to assert the defenses of failure of consideration, breach of warranty, and other similar pleas, the statute itself must stand guard over the rights of the defendant, on the ground of public policy, and this we think is done by paragraph 402 in the assertion that ''the action by the assignee shall be without prejudice to any setoff or other defense existing at the time of, or before, the notice of the assignment.''

The judgment of the lower court is affirmed.

McALISTER, C. J., and ROSS, J., concur.

LYMAN, J., having tried the case in the lower court, was disqualified, and Honorable GEORGE R. DARNELL, Judge of the superior court of Pima county, was called to sit in his stead.