[File No. 6976]

P. W. KILGORE, Appellant, v. THE FARMERS UNION OIL COMPANY OF EPPING, a Corporation, Respondent.

(24 NW2d 26)

Opinion filed August 24, 1946

*E. J. McIlraith,* for appellant.
*Walter O. Burk,* for respondent.

CHRISTIANSON, Ch. J. This controversy stems from a certain contract between the plaintiff and the defendant which provided for the sale by the plaintiff to the defendant of an oil and gasoline station at Epping in this state and the employment of plaintiff by the defendant to operate the station on a commission basis until the purchase price was paid.

At the threshold of the trial defendant's counsel stated: "At this time the Defendant moves that this action be tried before a jury, and the Defendant demands a jury trial in this action on the ground and for the reason that it appears from the very files that this action is one properly triable before a jury."

Plaintiff's counsel resisted the motion. The motion was denied and the trial proceeded. At the close of all the testimony defendant's counsel again moved the court that the action be tried to a jury. He stated: "The Plaintiff having rested, the Defendant moves that this action be tried before a jury on the ground that the pleadings and evidence before this Court show that this action is one properly triable before a jury only."

Plaintiff's counsel resisted the motion and the trial court denied it. The trial court thereafter made findings of fact wherein it found that there was due to the plaintiff from the defendant the sum of $551.33 as of November 15, 1944, and that upon a counterclaim the defendant was entitled to recover $293.51 with interest from November 15, 1941. Judgment was entered accordingly, and the plaintiff has appealed from the judgment and demanded a trial anew in the Supreme Court.

In his brief on the appeal defendant's counsel contends that the plaintiff is not entitled to a trial anew in this court. He says: "The plaintiff in his Notice of Appeal asks for a trial de novo in the Supreme Court. Defendant submits that plaintiff is not entitled to a trial anew in the Supreme Court. It appears both from the pleadings and the evidence introduced at the trial that this action is one for damages for breach of contract. The plaintiff in his prayer for relief in his complaint sought to avoid a jury trial by asking for an accounting. However, the allega-

tions of the complaint clearly show that the action is one for damages for breach of contract."

Counsel proceeds and calls attention to the demands made in the trial court that the case be tried to a jury.

In his complaint the plaintiff alleges that on January 16, 1935 he was the owner of a lease upon a certain tract of land known as plot 11 of the Great Northern Railway right of way at Epping, North Dakota, and that he owned certain oil station tanks and other oil station equipment situated on said land, and used the same in operating a wholesale and retail business of selling gasoline, kerosene, lubricating oils, tractor fuels and other articles of merchandise commonly sold in a general petroleum supply business. That on January 16, 1935 the plaintiff and defendant entered into a certain contract whereby the plaintiff agreed to sell to the defendant the above described property with the good will thereof, and that said contract also contained a provision for the employment of the plaintiff by the defendant until the said property should have been paid for in full. A copy of the contract is attached to and made a part of the complaint. The plaintiff is designated as party of the first part and the defendant is designated as party of the second part in said contract. The contract provides that the party of the first part in consideration of the covenants and agreements thereafter stated "does hereby sell to the party of the second part, and the party of the second part does hereby buy from the party of the first part" the said described property. The contract states that the purchase price of the property is $1884.00, "which said sum is evidenced by a promissory note in the sum of $1884.00 dated July 5, 1934, bearing interest at the rate of 6 per cent per annum upon the balance remaining unpaid from time to time from date of note until paid."

The contract provided that the party of the first part is to "operate said oil and gas distribution station for the party of the second part until said note above mentioned is paid, and in consideration of the performing of said services by the party of the first part and as full compensation therefor, and for all thereof, the said party of the second part agrees to and will pay to said

party of the first part, the following wages, by way of commission on sales of merchandise made and completed, at and through said oil station, by said party of the first part, namely: Two cents (2¢) per gallon upon all gasoline sold to consumers, flat rate, per gallon, one and one-half cents (1½¢) a gallon upon all gasoline hauled to all Farmers Union gasoline stations, one and one-half (1½¢) per gallon upon kerosene, two and one-half cents (2½¢) per gallon upon commercial alcohol, one and one-half cents (1½¢) per gallon upon tractor fuel, seven cents (7¢) per gallon upon lubricating oil and ten per cent (10%) upon greases and all other merchandise sold, all of the commissions above mentioned are to be paid in cash each month to the party of the first part."

"That all merchandise sold, of whatever nature or description, is to be sold for cash only and that if the party of the first part does sell any merchandise whatsoever upon credit that the amount so sold shall be deducted each month from the commissions to be paid to the party of the first part and retained by the party of the second part until said merchandise so sold upon credit is paid."

"That in addition to the commissions above mentioned to be paid, that the party of the first part is to be paid one-half cent per gallon upon all gasoline sold direct to consumers, which sum is to be paid monthly and is to be applied exclusively toward paying the purchase price of said oil station, and is to be credited upon the note in the sum of One Thousand Eight Hundred Eighty-Four Dollars ($1884.00) above mentioned. That the party of the second part shall not be required to make any payments toward the purchase price of said property other than paying over to the party of the first part one-half cent per gallon upon each and every gallon of gasoline sold direct to consumers. That the legal title to the property above described shall remain with the party of the first part until said note is fully paid, but that when such note is fully paid, that the party of the first part shall execute and deliver to the party of the second part a good and sufficient Bill of Sale giving merchantable title and also an

assignment of the lease which the party of the first part now has with the Great Northern Railway."

The contract provided that the party of the second part (defendant) should furnish and pay for all repairs that might be necessary in and about the oil station and should pay all taxes against the property beginning with the 1934 taxes and pay the rent under the lease to the Great Northern Railway Company. The contract provided also that the party of the first part (plaintiff) should work faithfully and diligently for the party of the second part (defendant) and operate and conduct the business in a businesslike manner and for the best interests of the party of the second part; that the party of the first part would keep accurate books of account and deposit all cash received from the business in the name of the party of the second part in the bank or banks designated by it. That the party of the first part (plaintiff) should pay for any and all assistance and employees that might be required to operate the business and that the party of the first part should be liable for any shrinkage of gasoline or any fuels delivered to him which go through the meter; and that the party of the first part should run all gasoline and other fuels through the meter in tanks where meters are used, and in the event of any shortage or shrinkage for which the party of the first part might be liable, the retail value of such merchandise should be deducted from the commissions due him.

The complaint alleged that the plaintiff remained "in the employment of the defendant under the terms and conditions of said contract until May 1, 1939 at which time the defendant did discharge this plaintiff from its employ and ordered him to keep away from said premises and placed padlocks upon the gates and entrances to the same and did keep the keys thereof, and did inform this plaintiff that they no longer wanted him in or about said premises in any way whatsoever;" that the defendant at the time of the discharge of the plaintiff had wholly failed to pay for the premises and property according to the terms and conditions of the contract; and that in disregard of the terms of the contract the defendant unlawfully discharged the plaintiff and thereafter neglected and refused to pay either the balance

of the purchase price due and owing to the plaintiff for the property or to pay him any further wages or commissions whatsoever according to the terms and conditions of the contract. "That thereafter and from on or about the 1st day of May, 1939 and up until the 15th day of November, 1941 the defendant remained in possession and control of said premises and did have the use and the benefits thereof to the entire exclusion of this plaintiff therefrom, and that on or about the 15th day of November, 1941, the defendant did serve upon this plaintiff a written notice that it did at that time cancel the contract hereinbefore mentioned under which terms they had agreed to purchase said premises and employ this plaintiff, and did in said notice inform this plaintiff that they made no further claim to the right of possession of any of said property. That because of the breach of said contract of employment between this plaintiff and defendant, that this plaintiff was thrown out of employment and was unable to obtain the same from and after the date of his discharge on May 1, 1939 to the 15th day of November, 1941 save and except that by diligently seeking employment and working at various occupations other than the oil business, this plaintiff has been able to earn the sum of One Thousand Twenty-six and 10/100 Dollars and was caused an expense of approximately One Hundred Fifty Dollars in seeking said employment, and that the difference between his net earnings in the sum of Nine Hundred Seventy-six and 10/100 Dollars and the sum he would have earned under and by virtue of the contract of employment with the defendant, is a total loss and damage to this plaintiff, all of which was caused by the defendant, and their breach of the contract, Exhibit "A," and their wrongful and willful act in discharging this plaintiff and precluding him from the management and control of his own property which the defendant had under contract."

The prayer for judgment in the complaint reads as follows: "That the defendant shall be required to account for all sales of merchandise made by them on and during the period of May 1, 1939 and November 15, 1941 and that therefrom that the commission and salary that is due and owing to this plaintiff under

the terms and conditions of the contract, Exhibit "A," be computed and that there shall be deducted therefrom the sum of Nine Hundred Seventy-six and 10/100 Dollars that was earned by this plaintiff from other sources and this plaintiff do have and take of the defendant a judgment for the balance due him together with the costs and disbursements of this action."

The defendant interposed an answer and counterclaim. The answer admitted the making of the contract; that the defendant entered into possession of the property; and that the plaintiff entered into the employ of the defendant under the contract. It admits, also, that the defendant discharged the plaintiff, but alleges that the discharge took place on March 24, 1939 instead of May 1, 1939 as alleged in the complaint, and it alleges that the defendant discharged the plaintiff from its employ on account of the willful disregard by the plaintiff of the terms and conditions of the contract between the parties. It alleges that the plaintiff violated the terms of such contract in certain particulars, among others, that he failed to report all sales made by him and failed to remit moneys collected for the sale of products; that the plaintiff appropriated to his own use the moneys not so remitted; that the plaintiff appropriated to his own use large quantities of gasoline without reporting or remitting to the defendant therefor; also, that plaintiff sold merchandise on credit in violation of the provisions of the contract between the parties.

The answer denies that defendant refused to pay the purchase price for the property and alleges that on several occasions it offered to pay the balance. The answer admits that the defendant served written notice of rescission of the contract upon the plaintiff on November 15, 1941. The defendant interposed certain counterclaims based upon the following grounds: (1) That certain goods were sold by the plaintiff on credit in violation of the terms of the contract; (2) That the plaintiff is indebted to the defendant upon a certain account that has been assigned to the plaintiff; (3) That the plaintiff converted to his own use and benefit 8000 gallons of gasoline of the reasonable value of $1400.00; and (4) That the defendant has made certain payments

upon the purchase price of the property aggregating in all $679.93; that defendant is entitled to have such payments returned, and judgment is asked for the amount of such payments.

Upon the trial the plaintiff interposed a reply which in effect denied the allegations in the counterclaims, and denied any liability on the part of the plaintiff thereon, and further averred that the right of action upon a number of the items included in the counterclaims was barred by the statute of limitations.

The first question presented for determination is whether the action is one properly triable to a jury and whether the trial court erred in denying a trial by jury. The constitution of this state provides: "The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law."

This constitutional provision preserves the right of trial by jury as it existed at and prior to the time the constitution was adopted. Barry v. Traux, 13 ND 131, 99 NW 769, 65 LRA 762, 112 Am St Rep 662, 3 Ann Cas 191; Smith v. Kunert, 17 ND 120, 115 NW 76; Power v. Williams, 53 ND 54, 205 NW 9.

In conformity with the constitution the legislature has provided that "an issue of fact in an action for the recovery of money only . . . must be tried by a jury, unless a jury is waived or a reference is ordered as provided in §§ 28–1701 and 28–1702." ND RC 1943, § 28–1206.

As the allegations of the complaint clearly show, this is not an equitable action, it is an action for the recovery of damages for the breach of contract. There is no claim that there is not an adequate remedy at law, and the allegations wholly fail to show any facts that would constitute grounds for an accounting in equity. Williams v. Herring, 183 Iowa 127, 165 NW 342, LRA 1918F 798; Sloane v. United Feature Syndicate, 135 Misc 365, 238 NYS 91; Holland v. Hallahan, 211 Pa 223, 60 A 735; Heck v. Voelkle, 95 Misc 692, 160 NYS 903; Freeman v. Miller, 157 App Div 715, 142 NYS 797; Casey v. Nye Odorless Incinerator Corp. 238 App Div 242, 264 NYS 207; Harris v. Thompson, 61 Colo 87, 156 P 149; General Electric Co. v. Westinghouse Elec-

tric & Mfg. Co. (CC) 144 F 458; Hicks v. Penn Mut. L. Ins. Co. (DC) 210 F 464; McLellan v. Goodwin, 43 App Div 148, 59 NYS 290; Ellis v. Southwestern Land Co. 102 Wis 409, 78 NW 583; Walter Diehnelt v. Root, 183 Wis 535, 198 NW 388; O'Neil v. E. I. DuPont de Nemours & Co. 12 Del Ch 76, 106 A 50; Iron Mountain v. Iron Mountain Waterworks, 206 Mich 537, 173 NW 612; United States v. Bitter Root Development Co. 200 US 451, 50 L ed 550, 26 S Ct 318; 1 Pomeroy's Equity Jurisprudence, 5th Ed, p 248.

The parties were not in any sense partners. There was no agreement to share either the gross or the net profits. There was a contract of employment by the terms of which the plaintiff was to be paid as compensation for his services a certain sum for each gallon of gasoline, kerosene, lubricating oil, or denatured alcohol sold. Plaintiff's compensation was not affected by the amount of moneys received from the sales or by whether there were or were not any profits realized from the business. Plaintiff's right of action and the amount of damages he may have sustained if the defendant breached the contract and wrongfully discharged the plaintiff and excluded him from the business were not affected by whether the defendant continued to operate the business. If the defendant in violation of the contract wrongfully discharged the plaintiff and excluded him from the business the defendant would obviously be liable for the injury occasioned by such wrongful action without regard to whether the defendant continued or did not continue to carry on the business. If the defendant instead of continuing to operate the business had abandoned it and ceased to operate altogether, this would not have affected the extent of the injury, or the amount of damages which plaintiff would have sustained or his right of recovery. Obviously, the plaintiff has no interest in any profits that the defendant may have realized or any losses it may have sustained during the time it operated the business after the plaintiff was discharged and dispossessed.

According to the facts stated in the complaint there was no account between the plaintiff and defendant. (United States v. Bitter Root Development Co. 200 US 478, 50 L ed 563, 26 S Ct

318.)  The account which the plaintiff prays be taken does not involve transactions, or items of account, between the plaintiff and defendant.  The only reference in the complaint to an accounting is in the prayer for judgment:—"That the defendant shall be required to account for all sales of merchandise made by them on and during the period of May 1, 1939 and November 15, 1941 and that therefrom that the commission and salary that is due and owing to this plaintiff under the terms and conditions of the contract, Exhibit "A," be computed  . . . ."  Manifestly, this does not constitute,—or even foreshadow,—a cause of action for an accounting in equity.  McLellan v. Goodwin, 43 App Div 148, 59 NYS 290, supra; Holland v. Hallahan, 211 Pa 223, 60 A 735, supra; Heck v. Voelkle, 95 Misc 692, 160 NYS 903, supra; Casey v. Nye Odorless Incinerator Corp. 238 App Div 242, 264 NYS 207, supra; Hicks v. Penn Mut. L. Ins. Co. (DC) 210 F 464, supra; Freeman v. Atlantic Mut. Ins. Co. 13 Abb Pr (N.Y.) 125.

"An account of one party against another is a series of charges for goods sold, etc., and is not merely introduced in evidence for the purpose of estimating damages, but is the foundation of the action."  Freeman v. The Atlantic Mutual Insurance Company, supra.

"Equity will not take jurisdiction of an accounting where there is no relation of trust, and the accounting is not complicated, and is merely a basis for ascertaining damages."  Holland v. Hallahan, 211 Pa 223, 60 A 735, supra.

As said here there are no allegations of fact in the complaint showing a ground for an equitable accounting.  The reference to an accounting in the prayer for judgment obviously does not supply the want of allegations showing grounds for an accounting in equity or convert the legal action for the recovery of money into an equitable action in accounting.  Wedin v. Atherholt, 298 Mich 142, 298 NW 483; Gorthy v. Jarvis, 15 ND 509, 108 NW 39; Heck v. Voelkle, 95 Misc 692, 160 NYS 903; 1 Pomeroy's Equity Jurisprudence, 5th Ed, p 248.  See also 49 CJ p 173.

"The jurisdiction of a court of equity cannot be predicated upon the prayer for relief, but must be based upon the allega-

tions of fact in the complaint." Wedin v. Atherholt, 298 Mich 142, 298 NW 483, supra.

"Where the complaint prays for both legal and equitable relief, but the former alone is warranted by the facts pleaded, it is error to deny defendant's demand for a jury trial." Gorthy v. Jarvis, 15 ND 509, 108 NW 39, supra.

Upon the record presented on this appeal "we are unable to retry the case, and for reasons which are fundamental. The action is at law for the recovery of money only, and was triable to a jury as a matter of strict legal right. The answer presents no equitable issues whatever. The statement of case shows that the defendant demanded a jury trial. This he was entitled to, and his right thereto was not waived. On the contrary, it was insisted upon in the district court, and is again urged in this court. Upon this state of facts the trial court has no authority of law to try the case without a jury, and for the same reason this court is also without authority to enter upon a retrial." Hanson v. Carlblom, 13 ND 361, 100 NW 1084.

The district court is directed to vacate the judgment and to order a new trial.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.