C. I. T. CORPORATION, a New York corpo-
ration, Plaintiff and Respondent,

v.

Julius HETLAND, Defendant and Appellant.

No. 8288.

Supreme Court of North Dakota.

April 27, 1966.

Rehearing Denied June 21, 1966.

Nilles, Oehlert & Nilles, Fargo, for plaintiff and respondent.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and appellant.

STRUTZ, Judge.

The plaintiff is a New York corporation doing business throughout the United States, including the States of North Dakota and Colorado. It engages in the business of financing.

The defendant lives in Fargo in this State. On August 23, 1962, he purchased an airplane from one Dick Nolan in Greeley, Colorado, where Nolan was engaged in the business of selling and servicing aircraft. The defendant was unable to pay the purchase price of $16,995 in cash, so he made a down-payment of $2,995 and executed a conditional sales contract for the balance of the purchase price of $14,000 plus finance charges on time sale of $4,199.80. This conditional sales contract was on a form furnished to the seller by the plaintiff finance company. It was assigned to the seller on the same day on which the defendant executed the contract.

Within a few days, the defendant flew the plane to his home in Fargo. On August 28, 1962, five days after it had been purchased, the plane was inspected by an inspector for the Federal Aviation Agency in Fargo. His report showed that certain repairs which had been made on the plane did not meet minimum requirements. The notice which was served upon the defendant pursuant to such inspection provided:

"THIS AIRCRAFT SHOULD NOT BE FLOWN EXCEPT ON A SPECIAL FLIGHT AUTHORIZATION (FERRY PERMIT) UNTIL AIRCRAFT FILE IS COMPLETE AND THE REPAIRS AND ALTERATIONS MEET MINIMUM REQUIREMENTS."

In the trial of the suit by the plaintiff finance company, as assignee of the seller,

for payments due under the contract, the trial court refused to admit this notice of the plane's condition into evidence and further refused to allow witness A. J. Kundert, a licensed flight instructor authorized to make inspections of aircraft by the Federal Government, to testify as to the results of his examination of the plane. The defendant thereupon made an offer of proof that Kundert, if permitted to testify, would state that the plane was not airworthy. This offer of proof was denied.

Because the results of the examination made it impossible for the defendant to secure a certificate permitting him to operate the plane, it has not been used since it was flown to Fargo on August 23, 1962, shortly after its purchase.

Immediately upon the plane's being pronounced not airworthy, the defendant, on September 10, 1962, by registered mail, notified the seller of his election to rescind the contract upon the ground that the plane had been declared not airworthy and that the buyer had been denied flight authorization because repairs and alterations to the plane did not meet minimum standards prescribed by the Federal Government. The defendant buyer offered to return the airplane in exchange for his down-payment of $2,995. A copy of such notice to rescind was sent to the plaintiff finance company.

While the contract involved in this action is a Colorado contract, both parties agree that the law of North Dakota should apply in its interpretation. The case was tried on that theory.

After the trial had begun, the defendant moved to amend his answer and counterclaim to allege usury. The trial court denied this motion, stating:

"* * * We have started the trial. The issue is joined. The court has discretion."

The conditional sales contract executed by the defendant for the purchase of the plane in question, which contract was as-signed to the plaintiff on the day the contract was executed by the defendant, was endorsed by the seller "Without recourse." The contract, as signed by the defendant buyer, had a provision which reads as follows:

"* * * If you assign this contract you shall not be assignee's agent for any purpose; buyer will settle all claims, defenses, set-offs and counterclaims it may have against you, directly with you, and not set up any thereof against your assignee, you hereby agreeing to remain responsible therefor; * * *."

The trial court found the execution of the installment contract by the defendant, the assignment of such contract by the seller to the plaintiff, and the stipulation waiving any defenses against the assignee in the event of an assignment, all valid. The court further found that, by reason of the execution of the installment contract by the defendant, with the stipulation waiving all defenses as against the assignee, any evidence of want or failure of consideration in the execution of the contract was incompetent, irrelevant, immaterial, and inadmissible by reason of such waiver of defenses as against the assignee, and that therefore the defendant was precluded from raising any such defenses against the plaintiff.

Judgment was entered for the plaintiff for the full unpaid balance due on the contract, together with interest and costs. From this judgment the defendant has taken this appeal, demanding trial de novo.

■ On appeal from a judgment in an action tried without a jury, where appellant demands a trial de novo, the appellate court tries the case anew, giving appreciable weight to the findings of the trial court. Spielman v. Weber (N.D.), 118 N.W.2d 727; Stark County v. Koch (N.D.), 107 N.W.2d 701; Strobel v. Strobel (N.D.), 102 N.W.2d 4.

This court will not apply the principle that in reviewing a case tried without a

jury, it will give appreciable weight to the findings of the trial court in order to relieve it from the necessity of performing its lawful duty to try anew questions of fact in the entire case. On trial de novo, it will find the facts for itself. In addition to trying anew questions of fact, this court will determine whether the trial court committed errors of law in trial of the action.

The first question which confronts us on this appeal is whether the trial court erred in refusing to permit the defendant to introduce evidence tending to prove failure of consideration for the contract by reason of the fact that the plane described in the contract was not airworthy and that no certificate could be secured permitting its use. In other words, was the defendant estopped by the provision in the contract waiving all defenses, as against the assignee, from showing by proper evidence that the consideration for the contract had failed?

■ Section 51–01–16(1), North Dakota Century Code, provides that where the buyer, expressly or by implication, makes known to the seller the purpose for which the goods are required, there is an implied warranty that the goods will be reasonably fit for that purpose.

An airplane presumably is purchased for the purpose of being flown. This purpose was known to the seller, Nolan, whether the defendant expressly informed him of such purpose or not. The seller knew that the defendant was not spending approximately $20,000 for an airplane that he would not be able to fly. Thus the sale carried with it an implied warranty of fitness, which could be urged against the seller.

■ Where a buyer of personal property serves upon the seller a notice of rescission of a contract on the alleged ground that there was a failure of consideration, he has the right, if he can prove such failure, to return the goods and recover his down-payment. Here, the de-fendant claimed that the plane he had purchased could not be flown because it failed to meet minimum standards required for the necessary Federal Aviation Agency certificate. If such certificate could not be obtained because of the condition of the plane, there clearly was a breach of implied warranty of fitness. Minneapolis Steel & Machinery Co. v. Casey Land Agency, 51 N.D. 832, 201 N.W. 172. Such notice was given promptly. Failure of consideration in any material respect is ground for the rescission of a contract as against the seller. Thus it is clear that had Nolan, who sold the plane to the defendant, continued to hold the conditional sales contract, the defendant would have been entitled to bring an action to rescind, and had he been able to prove failure of consideration, he could have rescinded the contract. But the contract had been assigned to the plaintiff, which contends that the contract cannot be rescinded after its assignment.

■ The Uniform Sales Act of North Dakota defines the word "seller." Section 51–01–01(19), North Dakota Century Code, provides that a seller is "a person who sells or agrees to sell goods, or any legal successor in the interest of such person." As a general rule, an assignee of a non-negotiable chose in action acquires no greater rights than those of the assignor, and he simply stands in the shoes of the assignor. General Motors Acceptance Corp. v. Davis, 169 Kan. 220, 218 P.2d 181, 18 A.L.R.2d 808; 6 Am.Jur.2d, "Assignments," Sec. 102, p. 282.

■ In this case, however, the conditional sales contract, as signed by the defendant, contained a provision that if the seller should assign the contract he would not be the assignee's agent for any purpose; that the buyer would settle any claims, defenses, setoffs, and counterclaims which he might have against the seller directly with him, and would not set up any of these against the assignee. Was the defendant estopped by this provision in the contract to

show, by proper evidence, that the consideration for the contract had failed?

If this were a suit between the buyer and Nolan, as seller, there would be no valid objection to competent evidence showing a failure of consideration. While our statute does provide that the term "seller" includes the legal successor in interest of the person who sells goods, the buyer here has agreed to look only to the seller named in the contract.

Section 51–07–09, North Dakota Century Code, provides:

"A cause of action or a right of action arising out of the sale of personal property cannot be waived, released, or barred before such cause of action actually has accrued, notwithstanding any terms or provisions of any contract or other written instrument to the contrary."

Here, the installment contract signed by the defendant attempts by its provisions to bar any cause of action which the buyer may have under the contract insofar as the assignee is concerned. It is an attempt to bar a cause of action arising out of the sale of personal property before such cause of action has accrued. If the defendant's contentions are correct, and if he can prove a failure of consideration, he would have a cause of action for rescission of the contract. Sec. 9–09–02(4), N.D.C.C. However, if the clause in the conditional sales contract by which the buyer agrees to settle any claims arising out of the contract directly with the seller and that he will not urge any cause of action he might have against the assignee, is a valid provision, then the defendant's cause of action for rescission as against the assignee is barred by such provision in the contract.

Our attention has been called to Section 1–02–28, N.D.C.C., providing that certain benefits of the law may be waived by parties to a contract. That section provides:

"Except when it is declared otherwise, the provisions of this code in respect to

the rights and obligations of parties to contracts are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts. The benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy."

We do not believe that the provisions of this section in any way affect the application of the provisions of Section 51–07–09, N.D.C.C., to the conditional sales contract here under consideration. Section 1–02–28 does not apply where there is specific statutory provision to the contrary, and Section 51–07–09 does provide to the contrary. It specifically says that a cause of action arising out of the sale of personal property cannot be waived before such cause of action has accrued, or come into existence. The cause of action which the buyer of the plane had for failure of consideration did not come into existence until it was discovered that the plane could not be flown. Thus the right of the buyer to rescind the contract for failure of consideration could not be waived before such cause of action had accrued.

Statutory provisions similar to Section 51–07–09, North Dakota Century Code, have been upheld. In 78 C.J.S. Sales § 641, at page 456, we read:

"* * * provisions in the contract waiving designated defenses are inoperative where they are in contravention of statute * * *"; citing San Francisco Securities Corp. v. Phoenix Motor Co., 25 Ariz. 531, 220 P. 229.

See also D.P.C. Corp. v. Jobson, 15 A.D.2d 861, 224 N.Y.S.2d 772.

If the finance company could avoid all liability under a conditional sales contract, as it contends in this action, and at the same time enjoy all of the benefits of the contract, great injustice would result. A finance company could buy contracts from the most unscrupulous dealers in the business and the buying public would have no

recourse except as against the unscrupulous and often insolvent dealer who sold the goods. We believe the finance company is in a far better position to know the type of man the seller is and that it is far more able to bear the risk of the dealer's insolvency than is the individual buyer. And it is in a far better position to protect its interests against such dealers. Therefore, to hold that the plaintiff in this case could take a conditional sales contract and be entitled to all of its benefits, but not be burdened with any of its obligations, would be a rank injustice.

We believe that the buyer's cause of action cannot be barred by the provision in the contract relied upon by the plaintiff as assignee. Obviously, by enacting Section 51–07–09, North Dakota Century Code, our Legislature had foreseen just such a situation as now confronts the court in this case. An unscrupulous seller, residing in a far-off place, or who might be judgment-proof, might enter into a contract for sale of personal property that is wholly unfit for the purposes for which such property is intended. In order to collect the full purchase price, while at the same time depriving the buyer of any effectual remedies given to him by law, such seller immediately assigns the contract to a finance company. Before the buyer has an opportunity to discover the total failure of consideration, such seller no longer has any interest in the contract. If the clause in the contract waiving the buyer's rights against the assignee makes it possible for such assignee to proceed to collect the full purchase price, the buyer is left without any remedy although there may be a total failure of consideration for the contract. It was this sort of thing that our Legislature was trying to prevent when it enacted Section 51–07–09, North Dakota Century Code, prohibiting any provision in a contract for sale of personal property which would bar such cause of action.

Therefore, since our law prohibits any provision in a contract for sale of personal property which would bar a cause of action such as the defendant alleges in this case, the plaintiff's action against the defendant is subject to any defense which the defendant could have urged against the seller, including the defense of failure of consideration.

This case comes before us for trial de novo. However, the trial court did not admit evidence on the question of failure of consideration, and we are unable to determine that question on the record before us. We therefore remand the case to the trial court for further proceedings consistent with this opinion.

The defendant raises two further issues on this appeal which should be decided since they no doubt will be raised on a retrial of this case. One of these issues is the contention that it was error for the trial court to deny the defendant a jury trial, as demanded in the answer. The other is whether it was error for the trial court to deny the defendant's motion for leave to file an amended answer raising the issue of usury. We will discuss these issues in the order in which they are raised by the defendant.

 The right to a trial by jury, in actions at law, with certain limitations, is a basic and fundamental part of our State and Federal systems of jurisprudence. Art. VII of Amends. to U. S. Constitution; Sec. 7 of N. D. Constitution. The method of preserving that right is provided for by our Rules of Civil Procedure. Rules 38 and 39 (a), N.D.R.Civ.P. None of the exceptions provided for in the State and Federal Constitutions apply in this case. This court has held that a litigant has the right to have a jury decide disputed questions of fact in cases properly triable to a jury, unless he waives that right. Kilgore v. Farmers Union Oil Co. of Epping, 74 N.D. 640, 24 N.W.2d 26. The right to a jury trial is the same under our Rules of Civil Procedure as was true before such rules were adopted, except that, to preserve such right, a litigant now must make demand that the case be tried to a jury.

 The provision in our Constitution that right of trial by jury shall remain inviolate neither enlarges nor restricts that right, but merely preserves it as it existed at the time of the adoption of our Constitution. Where the Constitution preserves the right of trial by jury in general terms, as our Constitution does, it preserves it for all cases in which it could have been demanded as a matter of right at common law. This right to a trial by jury is determined by the character of the issues as framed by the complaint. Rivinius v. Huber, 74 N.D. 773, 24 N.W.2d 911.

 In examining the complaint of the plaintiff in this case, we believe it is in form a complaint for the foreclosure of a lien. It is true that there is a demand for a money judgment, but that is true in the foreclosure of a lien. The complaint alleges that the holder of the contract has the election to seize, take, and sell the property described in the manner provided by law. The complaint then prays that the amount found to be due be decreed to be a valid lien upon the property described in the contract.

We believe that the trial court correctly ruled that this was an equitable action, triable to the court without a jury.

The final issue to be determined on this appeal is whether it was error for the trial court to deny the defendant's motion for leave to file an amended answer, raising the issue of usury.

The complaint of the plaintiff is dated September 23, 1963. The answer of the defendant was dated and served on October 14, 1963. The trial in the district court of Cass County commenced on October 19, 1964, more than one year after the answer had been served.

Our rules provide for amendment of pleadings. Rule 15(a) provides that a party may amend his pleading once, as a matter of course, at any time before a responsive pleading is served or, if the action has not been placed upon the trial calendar, he may amend at any time within twenty days after such pleading has been served. Otherwise, a party may amend his pleading only by written consent of the adverse party or by leave of the court. The above rule further provides:

"* * * leave shall be freely given when justice so requires."

Here, the defendant had served his answer more than one year before the case was reached for trial. At no time during that year did he move to amend. It was not until after the trial actually had started that the defendant moved to amend his answer. This motion was resisted by opposing counsel and the court denied it, pointing out that, "We have started the trial. The issue is joined. The Court has discretion."

 This court has held that denial of a motion to amend a pleading is not error as a matter of law. Galloway v. Forum Publishing Co. (N.D.), 138 N.W.2d 798. Such motion submits the question of amendment to the informed, careful judgment and discretion of the trial court, and, in the absence of abuse of this discretion, this court on appeal will not reverse a denial of a motion to amend.

 Our rule, providing that amendment of pleadings should be freely allowed when justice so requires, demands that trial courts should be very liberal in allowing amendments in the interests of justice. This should be especially true where the proposed amendment alleges that the other party is guilty of so serious a matter as usury. We have said, however, that in order to determine whether justice required the granting of a motion to amend, the trial court could consider whether the proposed amendment stated a claim upon which relief could be granted.

The trial courts should be liberal in allowing amendments in the interests of justice. We do not feel, however, that the denial of such motion to amend, under the circumstances of this case, after trial had commenced, was an abuse of discretion. The motion to amend was not based on new

information gained by the defendant in the course of the trial. All of the information on which such motion was made was available to defendant in the contract between the parties. Had such motion been timely made, before trial had started, it no doubt would have been granted.

The judgment of the trial court is reversed and the case is remanded for new trial.

TEIGEN, C. J., and KNUDSON, J., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

ERICKSTAD, Judge (concurring in part and dissenting in part).

I concur in the result but dissent to that part of the majority opinion which affirms the trial court's ruling denying Mr. Hetland's motion for leave to amend his answer to include the defense of usury.

If the rule of civil procedure, that leave to amend pleadings shall be freely given when justice so requires, is to be meaningful, the motion should have been granted.

The majority opinion concedes that this rule should be liberally construed but fails to apply a liberal construction in the instant case.

Text writers agree that construction of the rule should be liberal:

Under this rule leave to amend pleadings should be granted freely when justice so requires and the adverse party will not be prejudiced thereby, to clarify the issues and expedite the disposition of litigation. Indeed it is perhaps no exaggeration to say that the only reason for not allowing an amendment to a pleading is prejudice to the opposing party. What constitutes prejudice must be determined by examination of particular cases in which amendments have been considered; but the test in general seems to be that there must be some harm which the opposing party will suffer from the amendment which he would not have suffered had the original pleading followed the form sought by the amendment. * * * 1A Barron & Holtzoff, Federal Practice and Procedure § 442, at 709–711 (rules ed. 1960).

There was no showing that C.I.T. Corporation as plaintiff would have been irreparably prejudiced by the granting of the motion. The court upon proper application could have permitted a continuance of the case to permit the plaintiff to prepare for the new defense. Upon proper showing it could also have awarded costs to the plaintiff for additional expenses necessitated by the continuance.

A more usual and practical procedure would have been for the court to have postponed its decision on the motion for leave to amend the answer, while permitting testimony to be submitted on the issue (with ruling on the admissibility of testimony to be made later), and to have requested that the parties submit written briefs on the motion. This would not have delayed or interrupted the regular procedure of the trial.

Our Legislature has indicated its view of usury in §§ 47–14–10 and 47–14–11, N.D. C.C. We should be no less concerned than the Legislature in preventing usury. I do not mean to infer that I have determined that usury was committed in the instant case, but I believe it was an issue that should have been considered and passed upon by the trial court, not merely dismissed from consideration by the ruling on the motion.

I therefore believe that the trial court abused its discretion in denying the motion for leave to amend the answer to include the defense of usury.

On Petition for Rehearing.

STRUTZ, Judge.

A thirty-nine-page petition for rehearing has been filed by the plaintiff, in which it attempts to point out that the decision of the court in this case, in effect, rewrites a solemn contract entered into between the parties. The petition states that this court has, without just cause or legal reason, made ineffectual certain provisions of the contract which the parties entered into. It points out that the buyer had agreed in the contract that, should the seller assign the contract, the buyer would not set up any claims, defenses, setoffs, or counterclaims which he might have against the assignee, but would assert such claims against the seller only.

We believe this matter and other matters raised in this petition were fully considered in the opinion which has been rendered in this case. We would add, however, that plaintiff's contention that any defenses which the defendant had under the contract accrued immediately upon his signing the contract, and that therefore the provisions of Section 51-07-09 of the North Dakota Century Code would not be applicable, is clearly without merit. This section would be senseless if it were given the interpretation contended for by the plaintiff. As pointed out in our opinion, this section provides that a cause of action or a right of action arising out of the sale of personal property *cannot* be waived, released, or barred before such cause of action actually has accrued, " * * * notwithstanding any terms or provisions of any contract or other written instrument to the contrary." If we should adopt the plaintiff's view and hold that, on the signing of the contract, the de-

fendant's cause of action accrued immediately and that his discovery of his right of action a few days later comes too late, the above provision would be absolutely meaningless. The terms of the statute are clear. Any cause of action arising out of the sale of personal property cannot be waived, released, or barred before such cause of action actually has accrued, notwithstanding any terms or provisions of the contract. If the defendant's cause of action accrued immediately upon the signing of the contract, the enactment of the statute, " * * * notwithstanding any terms or provisions of any contract or other written instrument to the contrary," would be completely without effect.

The petitioner also states that there was no agreement that the law of North Dakota should apply in the interpretation of the contract in this case, which was a Colorado contract. The case was tried under North Dakota law. On oral argument in this court, both sides stated, in answer to inquiries by the court, that the case had been tried on the theory that the law of the forum applied, even though the contract was executed in Colorado. This being true, the plaintiff cannot now contend that the case should have been tried under Colorado law.

We adhere to our decision. The petition for rehearing is denied.

TEIGEN, C. J., and ERICKSTAD and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.