**Orville L. STUBER, Plaintiff and Appellant,**

v.

**Geraldine TAYLOR and James A. Rea, individually and as Co-executors of the Estate of Ruby F. Rea, Deceased, Defendants and Respondents.**

Civ. No. 8741.

Supreme Court of North Dakota.

Aug. 29, 1972.

Bjella & Jestrab, Williston, for plaintiff and appellant.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and respondents.

FRIEDERICH, District Judge.

This action was instituted in the District Court of Bowman County by Orville L. Stuber as Plaintiff, individually, and as administrator of the estate of J. C. Stuber, deceased, against the defendants, individually, and as co-executors of the estate of Ruby Rea, deceased. The Complaint prays for an injunction against the removal and destruction of records, for an accounting and for judgment in the amount found to be due. The trial court found the evidence insufficient to establish the right to an accounting and ordered a dismissal.

Although additional relief was prayed for in the Complaint, no specifications of error are recited by the Appellant, and we interpret the action as one for an account-

ing and the appeal from the trial court's finding that the Appellant failed to prove his right to compel an accounting.

The Appellant is the only son and Ruby Rea was the only daughter of J. C. and Anna Stuber, deceased. Respondents Geraldine Taylor and James A. Rea, are the surviving children of Ruby Rea, deceased, and co-executors of her estate.

J. C. Stuber, during his lifetime, accumulated extensive financial interests in farming and ranching, operated an implement business, farm and ranch store, a lumber yard, held mining, oil and gas rights, along with other real estate and investments. He died on December 19, 1963 at the age of 91, leaving surviving him his wife, Anna Stuber, and the two children, Appellant herein and Ruby Rea. Orville L. Stuber was appointed administrator of his father's estate on January 9, 1964.

On March 23, 1956 or about seven years before his death, a power of attorney was given by J. C. Stuber to his daughter, Ruby Rea. In February of 1959 Ruby Rea negotiated and executed a contract on behalf of her father as his attorney in fact for the sale of his partnership interest in the Stuber Implement Company to Orville L. Stuber for the sum of $70,000.00. At the time the power of attorney was executed, J. C. Stuber was ill and in the hospital, and on November 1st of the same year he assigned his interest in the lumber business to Ruby Rea by written assignment. (He continued in the personal management of his holdings thereafter to a greater or lesser extent until his death.) Anna Stuber, his wife, participated very little in the actual business affairs of her husband either before or after his death.

Ruby Rea was in ill health for a major part of her life, being afflicted with a heart condition. She was divorced and during the latter part of her life resided in Bowman, North Dakota, the same town in which her parents lived. She died on November 25, 1965. The Respondents are not only the co-executors of her estate, but also the sole legatees and devisees under her will. Anna M. Stuber died on July 20, 1968 at the age of 85.

During the lifetime of J. C. Stuber the Appellant Orville L. Stuber took an active part in the operation of the farming and ranching business with his father. The Stuber Implement Company and the Stuber Farm and Ranch Store were operated as corporations for some years prior to the death of J. C. Stuber. Appellant Orville L. Stuber owns three-fourths of the stock in the implement corporation and approximately one-half of the stock in the Farm and Ranch Store and the Stuber Land Company. Ruby Rea was a minor stockholder in these corporations. The corporations were regularly audited by a certified public accountant, and according to the testimony, past corporation records were in the family home of J. C. Stuber at Bowman, North Dakota, following his death until the family home was sold to Appellant's son. Prior to the time the house was sold these records were equally as accessible to the Appellant as to Ruby Rea. The Respondents at no time had actual possession of the records, and know very little about their mother's business affairs.

The transfer of funds which is claimed by Appellant as the basis for the accounting came about on March 13, 1956 when J. C. Stuber, then ill and in the hospital, drew a check on his personal account at the First National Bank of Bowman made payable to himself and to his wife, Anna Stuber, jointly, in the sum of $166,499.66. This draft closed out his personal account in First National and he re-opened a joint account with his wife on the same date in the same bank. Six days later on March 19, Anna Stuber drew two checks on this joint account of $50,000.00 each whereby she opened a checking account in the First National Bank of Hettinger and in the Buffalo State Bank at Buffalo, South Dakota, respectively. Both accounts were joint with right of survivorship in the names of Anna Stuber and Ruby Rea.

On April 2, 1956, Anna Stuber drew a check to herself on the account of the First National Bank of Bowman for $50,000.00 which she endorsed. The money was used for the purchase of $15,000.00 worth of Series E Bonds, $20,000.00 worth of Series H Bonds, and the remaining $15,000.00 was paid over to Ruby Rea in the amount of $3,000.00 and to Orville L. Stuber in the amount of $12,000.00.

Although the records are fragmentary, there is no question that Ruby Rea drew a substantial number of checks on the joint account of Anna Stuber and Ruby Rea in the First National Bank of Hettinger and the Buffalo State Bank in South Dakota. J. C. Stuber and Anna Stuber continued to make other deposits and withdrawals from the joint account in the First National Bank of Bowman subsequent to the three $50,000.00 checks previously referred to. Although only $16,499.66 of the initial deposit would have remained, the evidence shows withdrawals of over $90,000.00 thereafter.

Between 1956 and 1963 a total of over $600,000.00 in property was reported to the Internal Revenue Service as gifts to Orville L. Stuber and Ruby Rea; the greater portion of these gifts having been made to Ruby Rea.

Upon trial the able and experienced trial judge had the benefit of a certified public accountant as well as the testimony of a witness who did the bookkeeping for J. C. Stuber from 1948 until his death, and who now does the bookkeeping for the Stuber Implement Company. The accountant made a thorough examination of such books and records as were available, but a complete audit was difficult to make for the reason that some records were missing. After a careful consideration of all the evidence in the case, the trial court in his memorandum stated:

"The Plaintiff in this action seeks to establish a fiduciary relationship by showing that Ruby Rea was a member of a partnership with Orville and Anna Stuber and also by showing that she as agent under the Power of Attorney as executed by J. C. Stuber acted in a fiduciary capacity.

"In this there is no evidence that Ruby F. Rea was ever engaged in any business as a partner with the Plaintiff in this action. There is no evidence that Ruby F. Rea was ever engaged in any business as a partner with either J. C. Stuber or Anna Stuber. The evidence conclusively shows that the only possible fiduciary relationship existing between any of the parties in this case is by virtue of the Power of Attorney granted by J. C. Stuber to Ruby Rea. The Court has before found that Ruby Rea accounted in full for all money she received pursuant to the Power of Attorney. There is no duty to render a further account. That the Corporations in which J. C. Stuber was interested were not managed by Ruby F. Rea. That an annual audit was had of such corporations and there is no evidence that Ruby Rea was in any manner indebted to any of said corporations.

"The Plaintiff has failed to show that a fiduciary relationship existed between him and Ruby Rea or that a fiduciary relationship existed between Ruby Rea and J. C. Stuber or Anna Stuber. Neither has it been shown that any duty rested upon Ruby F. Rea or upon the Defendants in this case to render an account.

"Before the duty of a fiduciary to account arises it is essential that complainant establish not only the confidential or fiduciary relationship between the parties but also the receipt by the fiduciary of the funds to be accounted for.

"(Minn.) [231 Minn. 548] 44 N.W.2d 224, Physicians and Hospitals Supply Co. v. Johnson.

" 'Equity will not take jurisdiction on an accounting where there is no relation of trust and the accounting is not complicated, and is merely a basis for ascertaining damages.

" 'Kilgore v. Farmers Union Oil Co., (N.D.) [74 N.D. 640] 24 N.W.2d 26.

" 'A complaint stating a good cause of action does not as a matter of course give Plaintiff the right to an accounting. Before an accounting is in order, all matters in bar of an accounting should first be disposed of.

" 'Munce v. Munce, (S.D.) [77 S.D. 594] 96 N.W.2d 661.'

"The Plaintiff has failed to prove facts sufficient to entitle him to an accounting in this matter."

■ As pointed out in the foregoing quotation, an accounting is never ordered as a matter of course. Historically such an action was first founded in law, but the delay, complexity and cost of an accounting action generally made the equity courts a more adequate forum. Convenience and efficiency are not the only criteria, however. To warrant examination by the equity court, there must be more than just the existence of an account. There must be one or more of the following: (1) a fiduciary relationship with a duty upon the confidant to render an account; (2) a mutual or complicated account; (3) a particular need for a discovery; or (4) some other basis for equitable jurisdiction. 1 Am. Jur.2d, Accounts and Accounting, Sec. 51; 1 C.J.S. Accounting § 14.

The Appellant on cross examination admitted that no accounting was necessary with reference to the corporations, Stuber Land Company, Stuber Implement Company and Stuber Farm and Ranch Store. We conclude from this testimony that as to these business enterprises the case is abandoned. There remains for examination only that portion involving the power of attorney and the joint bank accounts with Anna Stuber.

■ A power of attorney creates an agency relationship between the principal, the one conferring the power, and the agent, upon whom the power is conferred.

It is not necessary for purposes of this discussion to define the myriad legal implications of a power of attorney. Suffice to say that because it is an agency relationship, the agreement by the agent to act on behalf of the principal causes the agent to be a fiduciary. Restatement of Agency 2d, Sec. 13. Among the duties of the agent in such a relationship is the duty to account for profit arising out of the agency and the duty to deal fairly with the principal in all transactions between them. Restatement of Agency 2d, Sec. 288.

If the fiduciary relationship created by the power of attorney justifies an accounting, then the Appellant's position is well taken. We have examined all testimony relative to the power of attorney and can find only one transaction in which this authority was used. We refer to the sale of the J. C. Stuber interest in Stuber Implement Company to the Appellant for the sum of $70,000.00. The evidence rather conclusively establishes that the $70,000.00 payment has not been made by the Appellant, nor was it listed on the inventory of the J. C. Stuber estate. No funds came into the possession of Ruby Rea by this sale for which she or her successors in interest could be required to account.

Much emphasis is placed by the Appellant upon the close proximity between the time the power of attorney was executed and the creation of the joint bank accounts of Anna Stuber and Ruby Rea. The joint bank accounts, however, are totally independent of the power of attorney. The signature card at the First National Bank of Hettinger did not purport to be signed by Ruby Rea under the authority of the power of attorney, nor were there any drafts on this account made by her in any other form than in her own name. Nothing is shown to have been otherwise in the account at the Buffalo, South Dakota, bank.

In addition to the contention that no fiduciary relationship existed which would demand an accounting, the Respondents re-

sist the action on the grounds that even if an accounting had been justified at one time, it is now barred by limitation and laches. Courts of equity have inherent power to refuse relief after undue and inexcusable delay notwithstanding any statute of limitation. Laches, under these circumstances, is founded upon the equity of granting relief after a long and material change in the conditions of the property or relations of the parties. Not only did J. C. Stuber live for almost eight years after the power of attorney was executed, but Ruby Rea survived him by two years and Anna Stuber lived for two and one-half years after the death of Ruby Rea. The action here was not commenced until March of 1969 after the death of the three individuals who could have best explained the purpose or intent of the transactions being questioned.

The Appellant lived in the same town and was associated with his father in a number of business ventures long before the power of attorney was executed and the joint accounts created, and this association continued until his father's death. His sister also lived in the same town and continued her participation in the family enterprises after her father's death until she died. The mother continued to live in Bowman until her death. Appellant was the executor of his father's estate since January of 1964. It is inconceivable that he should have been unaware of any irregularity or mishandling of funds by his sister during all of this time. He neither individually nor as administrator of the J. C. Stuber estate saw fit to file a claim against the Ruby Rea estate. The inequity of forcing an accounting at this later date is best expressed by the axiom: "He who

consents to an act is not wronged by it." Sec. 31-11-05(6) NDCC.

"Whether or not in a proceeding in equity the statute of limitation applies, the principal may be barred by laches by failing to take reasonable advantage of equity rights against the agent. He is barred by laches only if he has been unreasonable in delaying after learning the facts or if a hardship would result to the agent or to a third person because of a change of circumstances or because of the likelihood that relevant evidence could no longer be obtained." Restatement of Agency 2d, 421A(d). See also: Sequin v. Madison, 328 Mich. 600, 44 N. W.2d 150 (1950).

No good purpose would be served by discussing in detail the more than 100 exhibits in this case. We have examined the record and have given due consideration to all of the evidence. Although the suit is tried de novo in this court upon the record, nonetheless it is well established that upon disputed questions of fact the findings of the trial court thereon, though in no sense binding upon this court, are entitled to appreciable weight. From our own independent investigation and consideration of the record, there appears no valid reason for disturbing the decision of the trial court.

Judgment is affirmed.

STRUTZ, C. J., and TIEGAN, KNUDSON, and PAULSON, JJ., concur.

ERICKSTAD, J., deeming himself disqualified, did not participate; RAY R. FRIEDERICH, District Judge of the Second Judicial District, sitting in his stead.