304 P.3d 1109

**PARKWAY BANK AND TRUST COMPANY an Illinois banking association, Plaintiff/Appellee,**

v.

**Joseph ZIVKOVIC and Deanna Zivkovic, husband and wife; Equinox Development Corporation, an Illinois corporation, Defendants/Appellants.**

No. 1 CA–CV 12–0612.

Court of Appeals of Arizona, Division 1, Department A.

June 13, 2013.

---

Charles L. Firestein, P.C. by Charles L. Firestein, Phoenix, Leighton & Abdo, PLLC by Nicholas C. Abdo, Jason D. Leighton, Joshua W. Leighton, Scottsdale, Attorneys for Appellant.

Tiffany & Bosco, P.A. by Michael A. Bosco, Jr., Kevin P. Nelson, Paul D. Cardon, Phoenix, Attorneys for Appellee.

## OPINION

HALL, Judge.*

¶ 1 This appeal presents the issue whether the anti-deficiency protections afforded by Arizona Revised Statutes (A.R.S.) section 33–814(G) (Supp. 2012) may be prospectively waived by the trustor. Because we conclude that such protections serve an important public purpose and may not be waived, we vacate the partial summary judgment for Parkway Bank and Trust Company (Park-

* Judge Philip Hall was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective May 31, 2013. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12–145, the Chief Justice of the Arizona Supreme Court has designated Judge Hall as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

way) and remand for proceedings consistent with this Opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The following facts are not disputed. On November 21, 2006, Parkway provided an $894,703.85 loan to Equinox Development Corporation (Equinox), an Illinois corporation of which Joseph Zivkovic acts as President. As consideration for the loan, Equinox executed a promissory note in favor of Parkway. On the same date, Zivkovic and his wife executed a Deed of Trust and Assignment of Rents to a property in Mesa, Arizona (the property) in favor of Parkway. The Deed of Trust contained a provision that expressly waived "all rights or defenses arising" from "anti-deficiency law."

¶ 3 In May 2009, Parkway and Joseph Zivkovic renegotiated the terms of the loan to Equinox. On May 21, 2009, Joseph Zivkovic executed a promissory note in favor of Parkway, becoming the named borrower for the $894,703.85 loan originally extended to Equinox. The promissory note provided that Joseph Zivkovic would make "interest only" payments each month and the principal and any accrued and unpaid interest would be paid in full upon maturity, on May 21, 2010. The promissory note also incorporated by reference the 2006 Deed of Trust and Assignment of Rents and contained a provision choosing the law of Illinois as the governing law. As additional security, Equinox executed a commercial guaranty in favor of Parkway, guaranteeing full performance of Joseph Zivkovic's obligations under the promissory note. On the same date, Deanna Zivkovic executed a modification of Deed of Trust removing her name from the 2006 document.

¶ 4 Joseph Zivkovic failed to pay the amount due on May 21, 2010. On July 22, 2010, Parkway declared Joseph Zivkovic in default on the loan. On December 9, 2010, the property was sold through a trustee's sale. Parkway was the successful bidding party with a bid of $675,000.

¶ 5 On March 8, 2011, Parkway filed a complaint against the Zivkovics and Equinox seeking (1) a deficiency judgment for the "remaining balance due, including principal, interest, late charges [in the amount of] $277,966.06," and (2) damages for waste relating to damage to the property allegedly caused by the Zivkovics before they vacated the property. Soon thereafter, the parties each filed a motion for partial summary judgment on the deficiency judgment claim. Parkway argued that, applying Illinois law, as expressly chosen by the parties in the 2009 promissory note, the deficiency (the difference between the amount realized at the trustee's sale and the amount owed on the loan) was recoverable. *See* 735 Ill. Comp. Stat. 5/15–1511 (1987) ("[F]oreclosure of a mortgage does not affect a mortgagee's rights, if any, to obtain a personal judgment against any person for a deficiency."). The Zivkovics, on the other hand, argued Arizona law applies to the action and the deficiency is not recoverable pursuant to A.R.S. § 33–814(G) (barring an action "to recover any difference between the amount obtained by [trustee's] sale and the amount of the indebtedness" for qualifying properties).

¶ 6 The superior court granted Parkway's motion and denied the Zivkovics' motion. Finding that the parties did not dispute any material facts, namely that the deed of trust was foreclosed by a non-judicial sale and the successful bid reflected the fair market value of the property, the court held, in relevant part:

Illinois law applies to this case because the parties voluntarily chose it. All of the factors under the law, including the Restatement, have been satisfied to establish [t]he parties agreed that Illinois law would govern the substantive matters attendant to the right to a deficiency.

¶ 7 Thereafter, the superior court reduced its minute entry ruling to a signed Rule 54(b) judgment awarding Parkway $283,360.33 plus interest, attorneys' fees and costs. The Zivkovics timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (Supp. 2012).

## DISCUSSION

¶ 8 The Zivkovics contend that the superior court erred by granting partial sum-

mary judgment in favor of Parkway. Specifically, the Zivkovics argue that the superior court erred by finding that Illinois law governed the action rather than Arizona law.

¶ 9 A court shall grant summary judgment when "there is no genuine dispute as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a).[1] Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). If the evidence would allow "a jury to resolve a material issue in favor of either party, summary judgment is improper." *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

¶ 10 In reviewing a summary judgment, our task is to determine de novo whether any genuine issues of material fact exist and whether the trial court incorrectly applied the law. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.,* 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). We review the facts in the light most favorable to the party against whom summary judgment was entered. *Riley, Hoggatt & Suagee v. English,* 177 Ariz. 10, 12–13, 864 P.2d 1042, 1044–45 (1993).

■ ¶ 11 Whether a creditor may bring an action on a deficiency judgment "is a matter of substantive law." *Cardon v. Cotton Lane Holdings, Inc.,* 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992). "As a substantive matter, a deficiency action is governed by Arizona choice of law rules," meaning we look to "the Restatement (Second) of Conflict of Laws as our guide in resolving choice of law questions." *Id.* A deficiency action is governed by the law applicable to the underlying debt. Restatement (Second) of Conflict of Laws § 229, cmt. e. "The rules for ascertaining the state whose local law governs the

underlying debt" are set forth in Restatement (Second) §§ 187–88. *Id.*

■ ¶ 12 "If a contract includes a specific choice-of-law provision, we must determine whether that choice is valid and effective under Restatement § 187." *Swanson v. The Image Bank, Inc.,* 206 Ariz. 264, 266, ¶ 6, 77 P.3d 439, 441 (2003) (internal quotation marks omitted). "Choice-of-law issues are questions of law, which we decide de novo." *Id.*

¶ 13 Section 187(1) of the Restatement (Second) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

The parties agree that Illinois law allows a party to waive anti-deficiency protection. Thus, we must decide whether Arizona law likewise allows a waiver. If so, the parties' Illinois choice-of-law provision is controlling. *See Cardon,* 173 Ariz. at 208, 841 P.2d at 203 (finding that, because the parties could have contractually prohibited a default judgment under Arizona or California law, the parties' contractual choice to apply California substantive law was dispositive); *see also* Restatement (Second) § 187 cmt. c (explaining "there is no need [ ] to determine the state of the applicable law" when the issue "would be decided the same way by the relevant local laws of [ ] the potentially interested states").

¶ 14 If, however, Arizona law does not permit parties to waive anti-deficiency protections contractually, the court applies the "local law of the state selected by application" of the balancing test set forth in Restatement (Second) § 188 to determine whether the parties could have resolved this particular issue by explicit agreement. *See* Restatement (Second) § 187 cmt. c. Under A.R.S. § 33–814(G), deficiency judgments are not permitted after a trustee's sale if the trust property is two and one-half acres or

---

1.  Former Arizona Rule of Civil Procedure 56(c) has been renumbered as Rule 56(a), substituting the word "dispute" for "issue."

less and is utilized for either a single one-family or a single two-family dwelling.

¶ 15 Whether Arizona law bars a party from prospectively waiving its statutory anti-deficiency protections is a question of first impression.[2] Other states with similar anti-deficiency statutes, however, have concluded that a debtor may not prospectively waive anti-deficiency protections. *See, e.g., Brunsoman v. Scarlett*, 465 N.W.2d 162, 167 (N.D. 1991) (explaining the "rights and defenses granted debtors by the anti-deficiency judgment law would be largely illusory if a prospective creditor could compel a prospective debtor to waive them at the time the mortgage is executed"); *Chemical Bank v. Belk*, 41 N.C.App. 356, 255 S.E.2d 421, 427 (1979) (holding that allowing a debtor to waive protections of anti-deficiency statutes would violate important public policy concerns); *Freedland v. Greco*, 45 Cal.2d 462, 289 P.2d 463, 465 (1955) (same); *Stretch v. Murphy*, 166 Or. 439, 112 P.2d 1018, 1021 (1941) (same). *But see Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 280 (Tex.App.2004) (concluding debtors' prospective waiver of statutory right to challenge fair market value of property at foreclosure sale did not violate public policy, noting that Texas' statutory scheme "differs materially" from other states that bar deficiency judgments entirely in that Texas permits a creditor to seek a deficiency judgment subject to the debtor's right to seek a valuation of the property and an offset).

¶ 16 Arizona courts have similarly noted significant public policy concerns addressed through Arizona's anti-deficiency statutes. The statutes were intended to "protect [ ] consumers from financial ruin" and "eliminat[e] ... hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process." *Helvetica Servicing, Inc. v. Pasquan*, 229 Ariz. 493, 496, ¶ 9, 277 P.3d 198, 201 (App. 2012) (internal quotation omitted). The anti-deficiency statutes "allocate the risk of inadequate security" to lenders, "thereby discouraging overvaluation of the collateral." *Id.* at ¶ 30. Additionally, "[i]f inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, [the anti-deficiency statutes] prevent the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability." *Id.* at 500–01, ¶ 30, 277 P.3d at 205–06 (internal quotation omitted).[3]

¶ 17 Given the public policy concerns underlying Arizona's anti-deficiency statutes, we conclude that permitting a prospective waiver of anti-deficiency protections would violate a policy choice made by the Arizona Legislature.[4] Accordingly, because

---

2. Although Parkway relies on *Tanque Verde Anesthesiologists, L.T.D. Profit Sharing Plan v. Proffer Group, Inc.*, 172 Ariz. 311, 836 P.2d 1021 (App. 1992), to argue that Arizona case law permits prospective waivers of anti-deficiency protections, the case does not stand for that proposition. Instead, *Tanque Verde* contemplates that, after default, a party may, as part of default negotiations, agree to pay a deficiency remaining after sale of the property at issue. *Id.* at 313–14, 836 P.2d at 1023–24. Thus, *Tanque Verde* is inapposite here.

3. Parkway asserts that the scope of protection afforded by the anti-deficiency statutes is limited to borrowers of purchase-money mortgages, not persons, such as the Zivkovics, who acquired and then subsequently encumbered a property with a loan obligation. The parties do not dispute that the property subject to the Deed of Trust is less than two and one-half acres and was utilized, at the time of the default, as a single-family residence. Thus, there is no question that the property falls within the parameters of A.R.S. § 33–

814(G). Moreover, as reflected in the plain language of the statute, the protections of A.R.S. § 33–814(G) "appl[y] to all deeds of trust foreclosed by a trustee's sale whether or not they secure purchase money obligations." *Tanque Verde*, 172 Ariz. at 313, 836 P.2d at 1023 (citing *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1989)).

4. Citing *San Francisco Securities Corp. v. Phoenix Motor Co., Inc.*, 25 Ariz. 531, 220 P. 229 (1923), Parkway contends that the anti-deficiency statutes provide only a personal benefit and therefore may be waived. In *San Francisco*, the supreme court explained that "statutory provisions designed solely for the benefit of individuals may be waived by the persons for whose benefit they are designed." *Id.* at 536, 220 P. at 231. As explained in ¶ 16, *supra*, Arizona's anti-deficiency statutes have a broad public purpose and reflect a legislative determination that lenders, rather than borrowers, should bear the risk of loans secured by overvalued property. *See Stretch*, 112 P.2d at 1021 ("The [anti-deficiency] statute here

the parties could not have contractually waived the Zivkovics' statutory anti-deficiency protections under Arizona law,[5] we must determine the "local law of the state selected by application of the rule of § 188." Restatement (Second) § 187 cmt. c.

¶ 18 Section 188(2) of the Restatement (Second) sets forth five factors "to be taken into account ... to determine the law applicable to an issue: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." These factors "are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) § 188(2).

¶ 19 On appeal, as in the superior court, Parkway argues that the Restatement (Second) § 188 factors favor application of Illinois law. This argument is premised on Parkway's claim that the factors should be considered as they existed in 2006, at the time the original promissory note was executed. The superior court found, without explanation, that "all of the factors" establish that Illinois law governs.

¶ 20 The complaint, however, is predicated on the 2009 promissory note. Moreover, although Parkway argues the 2009 promissory note is merely an extension of the 2006 promissory note, there are material differences between the documents that demonstrate the 2009 promissory note is a separate contract with distinct terms.[6] For example, Joseph Zivkovic is the designated borrower under the 2009 promissory note and Equinox is the identified borrower in the 2006 promissory note. The nature of the security also differs under the notes. As an inducement for the 2009 loan, Equinox executed a commercial guarantee. In addition, Deanna Zivkovic was removed from the deed of trust—a material change to the underlying collateral. Therefore, the Restatement (Second) § 188 analysis requires evaluation of the factors as they existed at the time the 2009 promissory note was executed.

¶ 21 The parties do not dispute that Joseph Zivkovic negotiated the terms of the 2009 promissory note with the CEO of Parkway in Arizona. Nor do the parties dispute that Joseph Zivkovic, the only named borrower, executed the promissory note in Arizona. Thus, contrary to the superior court's finding, the first and second Restatement (Second) § 188 factors favor application of Arizona law.

¶ 22 In addition, Joseph Zivkovic made payments on the promissory note in Arizona, the property is located in Arizona, and Joseph Zivkovic was a resident of Arizona at the time the promissory note was executed.

involved is not one creating a merely personal privilege which may be waived. It is an inhibition against the court's rendering a certain kind of judgment[.]"). Therefore, because the anti-deficiency statutes were "established for a public purpose," they "cannot be contravened by private agreement." Cadle Co. II. v. Harvey, 83 Cal.App.4th 927, 932, 100 Cal.Rptr.2d 150 (2000); see also City of Glendale v. Coquat, 46 Ariz. 478, 483, 52 P.2d 1178, 1180 (1935) ("It is apparently universally held that where a right has been given to an individual not alone for his private benefit but, as a matter of public policy, in the interest of the state, it may not be waived by anyone.").

5. Neither party specifically briefed, and, therefore, we do not address, whether Equinox in its role as guarantor on the 2009 promissory note could contractually waive anti-deficiency protections. See A.R.S. § 33–814(A), (C).

6. In its answering brief, Parkway contends that the Zivkovics admitted the 2009 promissory note was merely an extension of the 2006 promissory note and therefore the Zivkovics are foreclosed from arguing the Restatement (Second) § 188 factors should be considered as they existed in 2009. As support for this claim, Parkway cites its separate statement of facts, which it contends asserted that the 2009 promissory note was a mere extension of the 2006 promissory note, and the Zivkovics' subsequent "failure" to specifically dispute that allegation in a controverting statement of facts. In its statement of facts, Parkway stated "Parkway provided a loan to Joseph Zivkovic in the principal amount of $894,703.85 on May 21, 2009." Contrary to Parkway's appellate argument, this factual assertion does not allege that the 2009 promissory note is merely an "extension" of the 2006 promissory note. Therefore, the Zivkovics did not "admit" that the 2009 promissory note was an extension by failing to challenge that allegation in a controverting statement of facts.

Other factors, such as Parkway's incorporation as an Illinois banking institution and Equinox's location, favor application of Illinois law. Thus, the evidence is split on the three remaining Restatement (Second) § 188 factors. Therefore, we remand to the superior court to reassess and weigh the Restatement (Second) § 188 factors, as they existed at the time the 2009 promissory note was executed, and determine which local law applies.

¶ 23 Because we conclude the superior court erred by finding all of the Restatement (Second) § 188 factors favor Illinois law, we need not reach the Zivkovics' additional claim that a deficiency judgment action is barred under application of Restatement (Second) § 187(2).[7] Upon remand, however, should the superior court determine the Restatement (Second) § 188 factors favor application of Arizona law, the court would then need to apply Restatement (Second) § 187(2). Under that subsection, the parties' choice of Illinois law applies unless: (1) Illinois has no substantial relationship to the parties or the transaction, Restatement (Second) § 187(2)(a), or (2) application of Illinois law is contrary to a fundamental Arizona policy and Arizona has a "materially greater interest" in the anti-deficiency determination than Illinois, Restatement (Second) § 187(2)(b). As clearly demonstrated from the record, and not disputed by the parties, Illinois has a substantial relationship to the parties and the transaction and Restatement (Second) § 187(2)(a) has been met. *See ABF Capital Corp. v. Osley,* 414 F.3d 1061, 1065 (9th Cir.2005) ("A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state."). The relative interest of the states and the extent to which Illinois law is "contrary to a fundamental" policy of Arizona, however, are issues for the superior court to determine, in the first instance. *See In re Zukerkorn,* 484 B.R. 182, 193 (Bankr.9th Cir.2012) (explaining the public policy exception set forth in § 187(2) "requires something more than the law of the other state be different"); *Jackson v. Pasadena Receivables, Inc.,* 398 Md. 611, 921 A.2d 799, 805 (2007) (concluding a conflict between the law of Maryland with the law of another jurisdiction does not, alone, "render the [law of the other jurisdiction] contrary to Maryland public policy" such that the law of the other jurisdiction is "unenforceable" under Restatement (Second) § 187(2)).

¶ 24 Without citation to authority, Parkway has requested an award of attorneys' fees against the Zivkovics and Equinox for this appeal. A "general request that [a party] be awarded attorneys' fees does not constitute a claim pursuant to statute, decisional law or contract" as required by Arizona Rule of Civil Appellate Procedure 21(c)(1). *Ezell v. Quon,* 224 Ariz. 532, 539, 233 P.3d 645, 652 (App.2010) (internal quotation omitted). Therefore, we deny Parkway's request.

## CONCLUSION

¶ 25 For the foregoing reasons, we vacate the partial summary judgment and remand for proceedings consistent with this Opinion.

CONCURRING: JON W. THOMPSON, Presiding Judge and KENT E. CATTANI, Judge.

---

7. Likewise, we do not reach the Zivkovics' alternative claim that, under Illinois law, the "marital community is not subject to liability" for the deficiency judgment.