351 P.3d 1099

**ARIZONA BANK & TRUST, an Arizona corporation, Plaintiff/Appellee,**

**v.**

**JAMES R. BARRONS TRUST, T–Group, LLC, an Arizona limited liability company; Creative Real Estate Investments # 1, Inc., an Arizona corporation; James R. Barrons and Laura Barrons, husband and wife; Daniel S. Warren and Stacey L. Warren, husband and wife; Thomas J. Tierney and Patricia Tierney, Defendants/Appellants.**

No. 1 CA–CV 13–0096.

Court of Appeals of Arizona, Division 1.

May 28, 2015.

As Amended Aug. 12, 2015.

---

Engelman Berger PC By Scott B. Cohen, Scott W. Hulbert, Bradley D. Pack, Phoenix, Counsel for Plaintiff/Appellee.

Goldman & Zwillinger, PLLC By Scott H. Zwillinger, Scottsdale, Counsel for Defendants/Appellants.

Ryley Carlock & Applewhite By William Scott Jenkins, Jr., Charitie L. Hartsig, Naomi E. Thurston, Phoenix, Counsel for Amicus Curiae Arizona Bankers Association.

Presiding Judge KENT E. CATTANI delivered the opinion of the Court, in which Judge MARGARET H. DOWNIE and Judge MICHAEL J. BROWN joined.

## OPINION

CATTANI, Judge:

¶ 1 This case addresses whether Arizona Revised Statutes ("A.R.S.") § 33–814(G), which precludes an action to recover a deficiency on a qualifying residential deed of trust, applies to guarantors in the same manner in which it applies to borrowers.[1] This court previously held that anti-deficiency protections under § 33–814(G) apply to and cannot be waived by borrowers; we left unanswered, however, whether guarantors are protected by § 33–814(G) as well and, if so, whether guarantors can waive that protection. We now hold that, assuming § 33–814(G) applies to guarantors, the protections

---

1. Absent material revisions after the relevant date, we cite a statute's current version.

afforded under the statute can be prospectively waived. Because the guarantors in this case entered written agreements expressly waiving anti-deficiency protections, we affirm the superior court's grant of summary judgment in favor of the lender.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In mid–2005, TDJ Land Investments, LLC ("TDJ") purchased several vacant lots of real property ("Subdivision"). Arizona Bank & Trust ("AZ Bank") financed TDJ's purchase and development of the Subdivision with a business loan secured by a promissory note and a blanket construction deed of trust on all lots within the Subdivision. Several individuals and entities (collectively, "Guarantors")[2] executed written, unconditional loan guaranties, which expressly waived any protection under anti-deficiency statutes:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent [AZ Bank] from bringing any action, including a claim for deficiency, against Guarantor, before or after [AZ Bank's] commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale ... or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

¶ 3 AZ Bank later provided TDJ two additional loans for the construction of specific homes within the Subdivision. Both loans specified that they were secured by the previously-executed guaranties. TDJ defaulted on both of these loans, and Guarantors failed to bring the loans current. AZ Bank foreclosed on the deeds of trust and purchased the loan properties at trustee's sales with credit bids for less than the amount owed, leaving deficiency balances of several hundred thousand dollars.

¶ 4 AZ Bank sued Guarantors to recover the deficiency under the terms of the written guaranties.[3] The superior court granted summary judgment in favor of AZ Bank on Guarantors' liability for the deficiencies, reasoning in part that Guarantors had waived any protection provided by § 33–814(G). After the parties stipulated to the loan properties' fair market values, the court entered judgment in favor of AZ Bank.

¶ 5 Guarantors timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1).

## DISCUSSION

¶ 6 Guarantors argue that the superior court erred by denying their cross-motion for summary judgment and by granting summary judgment in favor of AZ Bank. Guarantors assert that (1) as a matter of public policy, the anti-deficiency protections under § 33–814(G) apply to guarantors as well as borrowers and cannot be waived; (2) their generic waivers signed as part of a previous business loan did not waive anti-deficiency protections under § 33–814(G); and (3) whether the purported waivers were made knowingly and voluntarily is a question of fact that precludes entry of judgment.

¶ 7 Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review de novo the superior court's grant of summary judgment, viewing the facts in the light most favorable to the party against whom judgment was entered. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App.1990). We also address de novo issues of statutory interpretation—in this case the interpretation of the

---

2. Specifically, Guarantors are the Barrons Family Trust, T–Group, LLC, Creative Real Estate Investments # 1, Inc., James R. Barrons, Laura E. Barrons, Daniel S. Warren, Stacey L. Warren, Thomas J. Tierney, and Patricia R. Tierney.

3. AZ Bank also sued TDJ to recover the deficiencies, but the parties later agreed to dismiss the claims against TDJ because recovery was precluded by the anti-deficiency provisions of § 33–814(G).

anti-deficiency provisions of § 33–814(G). *See BMO Harris Bank, N.A., v. Wildwood Creek Ranch, LLC,* 236 Ariz. 363, 365, ¶ 7, 340 P.3d 1071, 1073 (2015). "We interpret statutes to give effect to the legislature's intent, looking first to the statutory language itself." *Baker v. Univ. Physicians Healthcare,* 231 Ariz. 379, 383, ¶ 8, 296 P.3d 42, 46 (2013).

## I. A Guarantor Can Waive Anti–Deficiency Protections Under A.R.S. § 33–814(G).

■ ¶ 8 The Arizona Legislature crafted the deed of trust framework in 1971 to provide an alternative to judicial foreclosures. *BMO Harris Bank,* 236 Ariz. at 365, ¶ 8, 340 P.3d at 1073. Under this framework, foreclosure occurs extra-judicially through a trustee's sale. *Id.;* A.R.S. § 33–807. Following a trustee's sale, the statutes limit the lender's ability to recover a deficiency judgment on deeds of trust that finance certain single or two-family residences:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. § 33–814(G). Here, the parties agree that the properties at issue are of the type described in this statutory provision, but they disagree on whether the statute protects guarantors as well as borrowers, and if so, whether a guarantor can prospectively waive the statutory protections.

¶ 9 For purposes of our analysis we assume, without deciding, that the "no action" provision in § 33–814(G) precludes an action against anyone, including a guarantor, to recover the difference between the amount owed on the borrower's indebtedness and the fair market value of the property securing the residential deed of trust. We thus address whether this statutory protection can be waived.

■ ¶ 10 Preliminarily, contract provisions are enforceable unless they are prohibited by law or are contrary to identifiable public policy. *CSA 13–101 Loop, LLC, v. Loop 101, LLC,* 236 Ariz. 410, 411, ¶ 6, 341 P.3d 452, 453 (2014). Arizona law values the private ordering of commercial relationships and seeks to protect bargained-for expectations. *Id.* Accordingly, the contractual terms between AZ Bank and Guarantors evidencing a bargained-for guaranty expressly waiving anti-deficiency protections should be upheld unless the terms are contrary to a legislative enactment or a public policy concern that clearly outweighs the parties' interest in enforcing agreed-upon contractual terms. *See id.* (citing Restatement (Second) of Contracts § 178) (1981).

¶ 11 In *Parkway Bank & Trust Co. v. Zivkovic,* this court held that § 33–814(G) precludes recovery of any type of deficiency from a *borrower* notwithstanding the borrower's express written agreement in the original deed of trust to waive anti-deficiency protections. 232 Ariz. 286, 290, ¶ 16, 304 P.3d 1109, 1113 (App.2013). *Parkway* left unanswered, however, whether the statute precludes recovery from a *guarantor* under an express written guaranty prospectively waiving anti-deficiency protections. *Id.* at 291 n. 5, ¶ 17, 304 P.3d at 1114 n. 5.

¶ 12 In *Parkway,* this court noted the "significant public policy concerns" addressed through the anti-deficiency statutes:

> The statutes were intended to "protect [ ] consumers from financial ruin" and "eliminat[e] ... hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process." The anti-deficiency statutes "allocate the risk of inadequate security" to lenders, "thereby discouraging overvaluation of the collateral." Additionally, "[i]f inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, [the anti-deficiency statutes] prevent the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability."

232 Ariz. at 290, ¶ 16, 304 P.3d at 1113 (quoting *Helvetica Servicing, Inc. v. Pasquan,* 229 Ariz. 493, 496, 500–01, ¶ ¶ 9, 30, 277 P.3d 198, 201, 205–06 (App.2012)).

¶ 13 Although some of these policy concerns arguably apply as between a lender and a guarantor, individuals who guarantee loans do not appear to be the type of consumers the Legislature intended to protect, primarily because a guarantor who is not the borrower does not face the risk of losing a home to foreclosure in the wake of a default. *See Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766 (1988) (noting legislative intent to protect consumers who fail to realize the extent to which they are subjecting assets besides their home to legal process and prevent artificial deficiencies resulting from market swings); *see also Long v. Corbet,* 181 Ariz. 153, 159, 888 P.2d 1340, 1346 (App.1994) (declining to extend anti-deficiency protections to someone who guaranteed a business loan and noting that "[t]he purpose of Arizona's anti-deficiency statutes is to protect 'homeowners' from deficiency judgments").

¶ 14 Moreover, Arizona courts have recognized significant differences between guarantors and borrowers, and this court has held in particular that "[a] guaranty may provide for greater liability than that of the principal debtor." *Provident Nat'l Assurance Co. v. Sbrocca,* 180 Ariz. 464, 466, 885 P.2d 152, 154 (App.1994) (citation omitted) (concluding that guarantors of a nonrecourse loan could be held liable to a lender based on their agreement to unconditionally guarantee what would otherwise be a nonrecourse promissory note). Thus, a guarantor may remain liable even if a lender has no further recourse against a borrower.

¶ 15 Prohibiting a guarantor from waiving anti-deficiency protections would be inconsistent with the basic purpose of a guaranty. If a guarantor could never be held liable for a deficiency on a residential real estate loan of the type contemplated under § 33–814(G), a guaranty on such a loan would be substantively meaningless following a trustee's sale. Unlike the homeowner/debtor, a guarantor risks nothing other than the funds to cover a deficiency. Thus, if § 33–814(G) cannot be waived by a guarantor, there would be no financial downside (other than a potential blemish on a credit report) for failing to pay the guaranteed amount. Such a guaranty would be illusory, and there would be little or no reason for lenders to seek loan guaranties or to proffer loans that would not otherwise be available without a guaranty.

¶ 16 We note that, unlike § 33–814(G), a separate portion of the anti-deficiency statute that provides "fair market value" protections following a trustee's sale specifically references guarantors. *See* A.R.S. § 33–814(A) (limiting the deficiency amount to be recovered from borrowers and guarantors under a foreclosed deed of trust by requiring an offset for the fair market value of the property or the sales price at the trustee's sale, whichever is higher). In *CSA 13–101 LOOP,* relying in part on the express statutory reference to guarantors, the Arizona Supreme Court concluded that the fair market value protection in subsection (A) applies to and cannot be waived by guarantors. 236 Ariz. at 414–15, ¶¶ 22–24, 341 P.3d at 456–57. But the absence of any such reference to guarantors in subsection (G)—particularly in light of the express reference to guarantors in subsection (A)—suggests the Legislature did not intend that subsection (G) would apply in the same manner with regard to guarantors. *See Anderson v. Valley Union High School,* 229 Ariz. 52, 59, ¶ 21, 270 P.3d 879, 886 (App.2012) (noting that "[t]he legislature is capable of saying what it means" and finding that the absence of terminology used in a related statute suggests an intentional choice not to use it in a different context) (citation omitted).

¶ 17 Moreover, the substance of such transactions also shows why the fair market value protection of subsection (A) applies to guarantors differently than the "no action" provision of subsection (G). Without subsection (A)'s fair market value protection, lenders would obtain a windfall if the sales price at a trustee's sale were lower than the fair market value of the property and the lender nevertheless collected from a guarantor a deficiency amount calculated using the sales price. In contrast, there is no windfall to lenders if guarantors are permitted to waive the "no action" protection under subsection

(G). If a borrower under a deed of trust defaults and the lender recovers a deficiency from a guarantor (limited to the amount based on the fair market value under subsection (A)), the lender is simply made whole. Accordingly, although the fair market value protection of subsection (A) applies to guarantors and cannot be waived, we decline to apply the "no action" provision of subsection (G) to guarantors in the same manner.

¶ 18 Finally, we note that other states have similarly found that guarantors can waive anti-deficiency protections, even if debtors cannot. *See, e.g., Bank of Okla., N.A. v. Red Arrow Marina Sales & Serv., Inc.,* 224 P.3d 685, 698 (Okla.2009) ("As the specially protected beneficiaries of the anti-deficiency statute, mortgage debtors cannot contract away that statute's protection. The guarantor is not so constrained."); *O'Brien v. Ravenswood Apts., Ltd.,* 169 Ohio App.3d 233, 862 N.E.2d 549, 556, ¶ 30 (2006) ("In light of this clear waiver language, we hold that the guarantors were precluded from raising any defenses under [Ohio anti-deficiency statutes]"); *Valley Bank v. Larson,* 104 Idaho 772, 663 P.2d 653, 655 (1983) ("A guarantor may legally contract to waive a defense provided by anti-deficiency judgment statute."). We are unaware of any court that has concluded that a guarantor cannot waive anti-deficiency protections of the type contemplated under § 33–814(G).

¶ 19 Guarantors rely on two cases from other jurisdictions in which anti-deficiency protections have been extended to guarantors. *See First Interstate Bank of Nev. v. Shields,* 102 Nev. 616, 730 P.2d 429 (1986), and *Gen. Motors Acceptance v. Smith,* 399 So.2d 1285 (La.Ct.App.1981). But those cases involve only the applicability of fair market value protections similar to those set forth in § 33–814(A). *See First Interstate Bank of Nevada,* 730 P.2d at 431; *Gen. Motors Acceptance,* 399 So.2d at 1287. Thus, the cases on which Guarantors rely are unavailing.[4]

¶ 20 In sum, we do not find a compelling public policy reason that outweighs the parties' interest in enforcing an express contractual provision guaranteeing payment of the debt at issue, anti-deficiency provisions notwithstanding. Accordingly, we decline to extend *Parkway* beyond its application to borrowers, and we thus hold that a guarantor can waive the anti-deficiency protections set forth in § 33–814(G).

## II. Guarantors Executed a Valid Waiver.

¶ 21 Guarantors argue that they did not waive anti-deficiency protections because the waiver at issue did not reference § 33–814(G) and was issued as part of a prior loan that was not subject to anti-deficiency protections. Guarantors further assert that there is a question of fact regarding whether they knowingly and voluntarily waived such protections.

¶ 22 We disagree with Guarantors' assertion that the signed guaranties did not waive anti-deficiency protections under § 33–814(G). In this context, waiver is "the express, voluntary, intentional relinquishment of a known right." *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). Although the guaranties were originally signed in conjunction with a prior transaction, the promissory notes securing the two loans expressly provided that each of the previously signed guaranties would secure these loans as well. Moreover, each of the guaranties expressly provided that Guarantors waived "any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any 'one action' or 'anti-deficiency' law or any other law which may prevent [AZ Bank] from bringing any action, including the claim for deficiency, against Guarantor." Even absent a specific reference to § 33–814(G), this language explicitly referencing anti-deficiency provisions was sufficient to show an express waiver of any anti-deficiency protection.

---

4. We note that Arizona is one of only 12 states that have this type of anti-deficiency protection. States that do not extend anti-deficiency protections to borrowers necessarily do not extend such protections to guarantors. Thus, a ruling that a guarantor cannot waive anti-deficiency protections under § 33–814(G) would reflect a "minority within a minority" position and would result in Arizona being the only jurisdiction in the United States to adopt such a rule.

¶ 23 Nor did Guarantors present a genuine issue of material fact as to whether this waiver was knowing and voluntary. They did not submit any evidence supporting their assertion that they did not know what rights they were waiving, and, in addition to the explicit reference to anti-deficiency law within the waiver provision, the guaranties included a written acknowledgment providing that each Guarantor "warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law." The guaranties themselves thus show a knowing, voluntary waiver, and absent any evidence to the contrary, the superior court properly granted AZ Bank summary judgment on this issue. *See Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶¶ 17–18, 292 P.3d 195, 199 (App.2012).

### III. Attorney's Fees and Costs.

¶ 24 AZ Bank seeks an award of its attorney's fees and costs on appeal under the terms of the guaranties. As the prevailing party on appeal, AZ Bank is entitled to such fees and costs, subject to compliance with ARCAP 21.

### CONCLUSION

¶ 25 The parties' bargained-for expectations contemplated that Guarantors would be liable for the loan deficiency after sale of the security. Given the absence of an express legislative provision addressing the enforceability of such a guaranty, and given Guarantors' express waiver of any arguably applicable provisions in § 33–814(G), we affirm the superior court's ruling granting summary judgment to AZ Bank and denying Guarantors' cross-motion for summary judgment.