NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

ALOHA GRADING, INC., *Plaintiff/Appellee,*

*v.*

TARYN C. SCHULTZ, et al., *Defendants/Appellants.*

No. 1 CA-CV 17-0325
FILED 5-8-2018

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2015-002773
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

———————————————

COUNSEL

Jeffrey M. Proper PLLC, Phoenix
By Jeffrey M. Proper
*Counsel for Plaintiff/Appellee*

Fowler St. Clair, PLLC, Mesa
By Sean P. St. Clair
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Chief Judge Samuel A. Thumma joined.

_____

**W I N T H R O P**, Presiding Judge:

¶1        Appellant Taryn C. Schultz ("Taryn") and Aloha Aquatic Center, LLC ("AAC") challenge the trial court's ruling granting summary judgment to Appellee Aloha Grading, Inc. ("AGI") allowing AGI to enforce a personal guaranty executed by Taryn.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        AAC executed a promissory note in favor of M&I Marshall & Ilsley Bank ("M&I") for $150,000 on March 24, 2008 (the "Note").  Taryn and Gus Schultz personally guaranteed the AAC Note (the "Guaranty").[1] Gus also executed a Deed of Trust in favor of M&I on his residence (the "Pecos Road Property") to secure the debt.

¶3        The parties executed a loan modification on May 15, 2012, that acknowledged an outstanding balance of $110,000 on the Note and extended the maturity date to January 15, 2015.  The Guaranty remained in place.  The Note was assigned to ATL Holdings ("ATL") on July 1, 2014.

¶4        ATL subsequently entered a Settlement Agreement and Mutual Release (the "Settlement Agreement") with several entities and individuals resolving defaults on two promissory notes executed by Aloha Development, Inc. ("ADI") in favor of ATL's predecessor (the "ADI Notes").  Under the Settlement Agreement, AGI purchased the Note from ATL, and ATL assigned to AGI its rights in the Note and the related collateral.  The Settlement Agreement also contained a broad release of various parties involved in the ADI transactions:

_____

[1]        Gus and Taryn divorced in 2012; AGI's counsel represented that, in the divorce, Taryn received AAC and assumed sole responsibility for the Guaranty in their consent decree.

> Effective upon satisfaction of all conditions . . . Lender for itself, and its respective heirs, representatives, successors and assigns hereby fully release and forever discharge Obligors and their respective present and former directors, shareholders, members, officers, managers, employees, agents, . . . predecessors, successors, assigns, (all of the foregoing persons and entities are referred to in this Section 4.1 as the "Borrower Parties" and are intended beneficiaries of this Agreement), from and against any and all claims, liens, . . . and liabilities of any nature, known and unknown, matured or unmatured, arising under, related to, or in connection with the Loan Documents, the Foreclosure, the Real Property, the Collateral, or any act or omission of the Borrower Parties in connection therewith, or arising out of the facts, transactions, and claims for relief alleged in or which could have been raised in connection with the Loan Documents or the Foreclosure.

These releases were subject to the following limitations:

> The release of Obligors from personal liability under or related to the Notes and the other Loan Documents (i) shall not terminate the Notes and the Loan Documents; and (ii) the indebtedness under the Notes, and the liens of the Deeds of Trust, the Assignments of Rents, and the Financing Statements shall not be extinguished as a result of this Agreement, or the transfers described in this Agreement, or the release of Obligors from personal liability under Section 4.1 above.

**¶5**　　　　AGI later released the deed of trust on the Pecos Road Property to Gus after Gus secured additional financing for AGI. The release document stated that the Note "ha[d] been paid in full," but AGI later contended it received no payment in exchange for the release.

**¶6**　　　　AGI filed suit in 2015 against Taryn and AAC alleging default on both the Note and Guaranty. The parties filed cross-motions for summary judgment. The trial court granted summary judgment for AGI, finding that the Note and Guaranty were not "Loan Documents" and that Taryn was not an "Obligor" under the Settlement Agreement. The court determined that the Settlement Agreement's focus was "not the AAC Loan or Guaranty, but rather the almost $1 million owed by ADI to ATL." The court also rejected Taryn's contention that AGI's claim was barred by

Arizona Revised Statutes ("A.R.S.") section 33-814(G), which precludes a deficiency judgment if a property "of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling" is sold at a trustee's sale.

¶7          Appellants timely appealed following the entry of final judgment.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**ANALYSIS**

¶8          "On a motion for summary judgment to enforce a written guaranty, all that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty." *Ciena Capital Funding, LLC v. Krieg's, Inc.*, 242 Ariz. 212, 217-18, ¶ 17 (App. 2017).  Appellants do not directly contest these elements. They instead raise three defenses to the Guaranty, which we address below.

> I.          *The Settlement Agreement Did Not Release Taryn from Her Guaranty Obligations*

¶9          Appellants first renew their contention that the Settlement Agreement released Taryn from liability on the Guaranty.  The Settlement Agreement released all named "Obligors" and their directors, shareholders, members, and officers from claims arising out of the "Loan Documents." While Taryn was not named as an Obligor, the parties do not dispute she was a past shareholder and officer in AGI, a named Obligor.  We therefore must determine whether the Guaranty was a "Loan Document" under the Settlement Agreement.

¶10          Our goal in interpreting a contract is to determine and enforce the parties' intent.  *Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255, ¶ 14 (App. 2017) (citing *US W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280 (App. 1996)).  We "look to the plain meaning of the words as viewed in the context of the contract as a whole." *Id.* (quoting *United Cal. Bank v. Prudential Ins.*, 140 Ariz. 238, 259 (App. 1983)).  We review the trial court's interpretation of the Settlement Agreement *de novo.  Colo. Cas. Ins. Co. v. Safety Control Co.*, 230 Ariz. 560, 565, ¶ 7 (App. 2012).

¶11          The Settlement Agreement defined "Loan Documents" as "[t]he Promissory Notes, the Deeds of Trust, the Assignments of Rents, the Guarantees, and any and all other loan documents between the Parties." "Guarantees," in turn, was defined as the "multiple commercial guarantees to Lender" executed by Taryn and others "[a]s additional security for all obligations of Borrower to Lender."  The named "Borrower," however, was

ADI. Taryn executed the Guaranty to provide security for AAC's, not ADI's, obligations. Accordingly, the Guaranty at issue in this case was not a "Guarantee" under the Settlement Agreement.

¶12　　　　Appellants alternatively contend the Guaranty falls within "any and all other loan documents between the Parties" in the definition of "Loan Documents" in the Settlement Agreement because it was between ATL's predecessor in interest, M&I, on the one hand, and Gus and Taryn on the other. Appellants did not raise this argument in the trial court and therefore have waived it. *See, e.g., Lemons v. Showcase Motors, Inc.*, 207 Ariz. 537, 541 n.1, ¶ 17 (App. 2004).

¶13　　　　Appellants also contend the parties "stipulated" that the Guaranty was a "Loan Document" in briefing before the superior court. Even assuming this contention is true, the interpretation of a contract is a matter of law, not a question of fact. *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 328 (App. 1995). Neither we nor the trial court is bound to accept the parties' interpretations of the Settlement Agreement. *See Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567 n.3, ¶ 6 (App. 2002) ("[H]ad the parties stipulated to [the appellant's] third-party beneficiary status, we would not be bound by it. 'Parties cannot stipulate as to the law applicable to a given state of facts and bind the court.'") (quoting *Word v. Motorola, Inc.*, 135 Ariz. 517, 520 (1983)). The plain language of the Settlement Agreement does not release Taryn from her obligations under the Guaranty. *See Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 367, ¶ 40 (App. 2015) ("When the terms of a contract are clear and unambiguous, the trial court gives effect to it as written.").

### II.　　　*Tanque Verde Does Not Bar AGI's Claim*

¶14　　　　Appellants next contend AGI waived its claim against them by releasing its deed of trust on the Pecos Road Property, citing *Tanque Verde Anesthesiologists, L.T.D. Profit Sharing Plan v. Proffer Group., Inc.*, 172 Ariz. 311 (App. 1992). There, a lender agreed to release two deeds of trust in exchange for approximately $36,000, but inserted language in the deed of release stating that it did not "constitut[e] evidence of full satisfaction of the Promissory note . . . ." *Id.* at 313-14. We determined that the lender waived any deficiency claim despite this language when it signed the deed of release and that the borrower was protected by § 33-814(G) even though no trustee's sale had occurred. *Id.* at 314.

¶15　　　　*Tanque Verde* is distinguishable as to Taryn because she was not the borrower; she instead was a guarantor who could waive the § 33-

814(G) protections.  *See Ariz. Bank & Trust v. James R. Barrons Trust*, 237 Ariz. 401, 406, ¶ 20 (App. 2015).  Taryn did so under the Guaranty:

> Guarantor . . . waives any and all rights or defenses . . . arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action . . . .

Moreover, unlike the lender in *Tanque Verde*, AGI presented undisputed evidence that it did not receive any funds in exchange for the deed of release.  Additionally, nothing in the record shows that AGI received any other consideration in exchange.  Thus, there was no evidence that AGI "agreed to release the trust deed[] in exchange for the receipt of . . . escrow proceeds and that it received the amount agreed upon[,]" or received non-nonmonetary consideration, as in *Tanque Verde*.  172 Ariz. at 313.  Accordingly, as to Appellants, *Tanque Verde* does not apply to the facts of this case.

### III.      *Section 33-814(A) Does Not Bar AGI's Claim*

**¶16**      Appellants contend the waiver quoted above was ineffective because AGI created an "artificial deficiency" by releasing its deed of trust without receiving fair market value for the Pecos Road Property.  Appellants cite *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 415, ¶ 23 (2014), for the proposition that the fair market value protections of § 33-814(A) cannot be prospectively waived.

**¶17**      Section 33-814(A) applies to deficiency actions brought after a trustee's sale.  *See id.* at 411, ¶ 1 ("When a deed of trust secures a promissory note *and the trust property is sold at a trustee's sale*, A.R.S. § 33-814(A) entitles judgment debtors, including guarantors, to have the fair market value of the property credited against the amount owed on the note.") (emphasis added).  As AGI did not conduct a trustee's sale of the Pecos Road Property, neither section 33-814(A) nor *CSA 13-101* apply.

### IV.      *Attorneys' Fees and Taxable Costs on Appeal*

**¶18**      AGI requests its attorneys' fees incurred in this appeal pursuant to the Guaranty, which obligates Taryn to pay "all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty."  We generally enforce a contractual attorneys' fee provision according to its

terms.  *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13, ¶ 17 (App. 2011).  We retain discretion, however, to limit the award to a reasonable amount. *McDowell Mountain Ranch Comty. Ass'n v. Simons*, 216 Ariz. 266, 270, ¶ 16 (App. 2007).  We therefore will award AGI reasonable attorneys' fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm the judgment.



AMY M. WOOD • Clerk of the Court
FILED:  AA