NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THE SPANISH HILLS CONDOMINIUMS ASSOCIATION,
*Plaintiff/Appellee*,

*v.*

ROBERT WOLLNER, *Defendant/Appellant*.

No. 1 CA-CV 18-0344
FILED 2-19-2019

Appeal from the Superior Court in Maricopa County
No.  CV2016-090516
The Honorable David King Udall, Judge

**AFFIRMED**

APPEARANCES

Robert Wollner, Phoenix
*Defendant/Appellant Pro Se*

Maxwell & Morgan, P.C., Mesa
By Chad M. Gallacher
*Counsel for Plaintiff/Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

_____

**M O R S E**, Judge:

**¶1**   Appellant Robert Wollner ("Wollner") appeals the judgment entered in favor of Spanish Hills Condominium Association ("Association") following a bench trial on the Association's claims for judicial foreclosure. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**   The Association is a non-profit corporation whose members are the owners of dwelling units ("Property") within the Spanish Hills Condominiums community ("Community"). All Property within the Community is subject to the Declaration of Horizontal Property Regime Together with Covenants, Conditions and Restrictions for the Spanish Hills Condominiums ("Declaration").

**¶3**   Between July 2014 and January 2015, Wollner failed to pay assessments[1] and fees owed to the Association by virtue of his ownership of Property within the Community subject to the Declaration.[2] Wollner was put on "auto debit" and resumed paying monthly payments in amounts equal to the then-current months' assessments ("Assessments"). He was notified, however, that although the Association agreed to put him on auto pay "to pre[c]lude [his] account going further into debt," the Association would take separate measures to collect the outstanding debt. In April 2015, after sending multiple demand letters and notices of delinquency to

_____

[1]  Out of the assessments charged during this time—totaling $1,072.00—Wollner made only one payment, which was delivered on September 23, 2014, in the amount of $653.00.

[2]  Under Article V Section 1 of the Declaration, each owner of Property within the Community "is deemed to covenant and agree to pay" to the Association: (1) annual assessments; (2) special assessments; and (3) supplemental assessments.

Wollner, the Association filed and recorded a Notice of Claim of Lien and claimed a lien ("Assessment Lien") on Wollner's Property, pursuant to the Declaration.[3] The Association claimed that as of April 22, 2015, Wollner "is delinquent in the amount of not less than $9,133.23 in amounts secured by the assessment lien," which does not include other amounts due to the Association.

**¶4** In January 2016, the unpaid portion of Wollner's Assessments imposed between July 2014 and January 2015 became one-year delinquent. In February 2016, the Association filed suit against Wollner to foreclose the Assessment Lien against his Property pursuant to the Declaration and Arizona Revised Statutes ("A.R.S.") section 33-1256(A).

**¶5** In November 2016, a special trash collection assessment ("Special Assessment") was approved by vote of the members of the Association, pursuant to the Declaration. Wollner challenged the Special Assessment by filing a lawsuit, which was dismissed. As such, the Special Assessment remained due and payable by each member of the Association. Wollner did not pay any of the monthly installments required by the Special Assessment.

**¶6** Before trial, Wollner continued to file various motions with the superior court asserting that he believed all Assessments and Special Assessments had been paid. By the time the date of the trial came on March 6, 2018, the unpaid Special Assessments were more than one-year delinquent.

**¶7** At trial, the Association presented Wollner's accounting records ("Account Summary"), which disclosed the Assessments and Special Assessments that Wollner failed to pay. Wollner acknowledged that the Account Summary was accurate, but he claimed that all assessments were paid. He argued that his sister purchased his property and thus pays the assessments "every year" and diligently pays "month after month."

---

[3] Under Article V Section 9 of the Declaration, "[a]ny assessment, or any installment of an assessment, which is delinquent shall become a continuing lien on the [Property] against which such assessment was made. The lien shall be perfected by the recordation of a 'Notice of Claim of Lien.' . . . Before recording a lien against any [Property] the Association shall make a written demand for payment to the defaulting [o]wner."

**¶8**            After taking the matter under advisement, the superior court found that Wollner failed to pay all Assessments imposed between the months of July 2014 and January 2015, and all Special Assessments imposed beginning in November 2016. The court further found that Wollner's delinquency secured by the Assessment Lien against his Property is $23,489.44. Accordingly, in a later judgment, the court ordered the Assessment Lien be foreclosed on. Wollner timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶9**            On appeal, we are bound by the superior court's findings of fact unless they are clearly erroneous. *FL Receivables Trust 2002-A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, 166, ¶ 24 (App. 2012). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Castro v. Ballesteros-Suarez,* 222 Ariz. 48, 51-52, ¶ 11 (App. 2009) (quoting *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003)). "Evidence is substantial if it allows 'a reasonable person to reach the trial court's result.'" *Id.* at 52, ¶ 11 (quoting *Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18 (App. 2005)). Furthermore, we consider issues of statutory interpretation and the interpretation of restrictive covenants and other contracts de novo. *Ariz. Bank & Tr. v. James R. Barrons Tr.*, 237 Ariz. 401, 403-04, ¶ 7 (App. 2015); *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 38, ¶ 10 (App. 2018).

**¶10**          Wollner raises two arguments on appeal. First, Wollner argues that the superior court erred when it found that Wollner was more than one-year delinquent on his monthly assessments. He asserts that his monthly assessments were paid in full and therefore the Association could not foreclose on his Property. Second, Wollner claims affidavits submitted before trial contained perjury and that the Association also committed perjury at trial. Despite the superior court's role in determining the credibility of testimony, he asks this court to consider this claim.

## I.     Waiver

**¶11**          An appellant's opening brief must include, for each contention, the applicable standard of appellate review with citations to supporting legal authority and references to the record on appeal. Ariz. R. Civ. App. P. 13(a)(7). An opening brief must also include contentions concerning each issue, with supporting reasons for each contention. *Id.*; *cf. State v. Bolton*, 182 Ariz. 290, 298 (1995) (finding claims waived for insufficient argument on appeal). Here, although Wollner mentions A.R.S.

§ 33-1256(A) in his opening brief, he does not develop his arguments, state an applicable standard of review, cite to relevant legal authority, nor provide any record citations. Notably, Wollner does not cite to or identify any specific part of the record to support his claims that the superior court erred. Instead, he offers blanket assertions, without supportive record citations, that the assessments were paid. Because Wollner's arguments are not sufficiently developed, he has waived his claims on appeal. *See Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 418, ¶ 11 (App. 2010) (holding that a claim will be waived where it is "wholly without supporting argument or citation to authority").

## II. Foreclosure on the Assessment Lien

**¶12** Even if Wollner's arguments were not waived, the superior court correctly found that the Association could foreclose its Assessment Lien on Wollner's Property. The Declaration and A.R.S. § 33-1256(A) both provide authority for the Association to foreclose on an assessment lien. Article V, Section 9 of the Declaration provides, in pertinent part, the following:

> The Association shall have the right . . . to enforce collection of any delinquent assessments in any manner allowed by law including . . . bringing an action to foreclose its lien against the [Property] in the manner provided by law for the foreclosure of a realty mortgage.

Similarly, A.R.S. § 33-1256(A) provides that a homeowner's association "has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due." The association may foreclose on the lien "in the same manner as a mortgage on real estate . . . if the owner has been delinquent in the payment of monies secured by the lien . . . for a period of one year." *Id*.

**¶13** Wollner argues that because the superior court erred in determining that he was delinquent in assessment payments for more than one year, the Assessment Lien was not yet subject to foreclosure under A.R.S. § 33-1256(A). He asserts that there was "only one assessment payment shown in the . . . Account Summary that is unpaid" and that "[f]our years of payments are shown as paid in full from 2014 to 2018." At trial, however, Wollner testified that the Association's Account Summary was an accurate accounting. The Account Summary showed Wollner was delinquent in Assessments — from July 2014 to January 2015 — for more than one year, and delinquent in all Special Assessments starting from

November 2016. Wollner further testified that his sister is a "millionaire[]" and paid his "assessments year in and year out out of her bank account." He also stated that because his sister is a "millionaire[]" she is "a little bit particular about sending [her] account information out," which is why he did not provide the court her bank statements showing assessment payments.

¶14 The superior court weighed the conflicting evidence and we must defer to those factual findings. *FL Receivables Trust 2002-A*, 230 Ariz. at 166, ¶ 24. When the only evidence presented by Wollner is his unsupported assertion that the assessments were paid, we cannot find that the superior court committed clear error. Accordingly, under A.R.S. § 33-1256(A), the superior court did not err in finding that the Assessment Lien was perfected by recordation, *supra* note 3, and subject to foreclosure by the Association.

### III.    Perjury Claim

¶15 Wollner alleges that various individuals committed perjury in the proceedings below, and points to affidavits submitted before and during trial as containing perjured statements. He first asserted this claim in a motion for reconsideration following trial. On appeal, we generally do not consider arguments raised for the first time in a motion for reconsideration. *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006). "[W]hen a new argument is raised for the first time in a motion for reconsideration, the prevailing party below is routinely deprived of the opportunity to fairly respond." *Id.* Here, the superior court never requested a response to Wollner's motion for reconsideration but merely denied it. The Association was therefore deprived of the opportunity to respond to Wollner's arguments. Accordingly, we decline to consider Wollner's perjury claim. *See Ramsey v. Yavapai Family Advocacy Ctr.*, 225 Ariz. 132, 137-38, ¶¶ 18, 21 (App. 2010) (declining to consider an argument raised on appeal when the appellant only raised the issue for the first time in a motion for reconsideration and the appellees had been "deprived of the opportunity to respond").

### IV.    Attorneys' Fees and Costs

¶16 The Association requests an award of attorneys' fees and costs incurred on appeal pursuant to the Declaration and A.R.S. §§ 12-341.01 and 33-1256. As the successful party in a matter arising under contract, we award the Association reasonable attorneys' fees and costs incurred on

appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶17** For the foregoing reasons, we affirm the superior court's final judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA